Justice Stevens
delivered the opinion of the Court.
The right to a fair trial, guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment, imposes on States certain duties consistent with their sovereign obligation to ensure “that ‘justice shall be done’” in all criminal prosecutions. United States v. Agurs, 427 U. S. 97, 111 (1976) (quoting Berger v. United States, 295 U. S. 78, 88 (1935)). In Brady v. Maryland, 373 U. S. 83 (1963), we held that when a State suppresses evidence favorable to an accused that is material to guilt or to punishment, the State violates the defendant’s right to due process, “irrespective of the good faith or bad faith of the prosecution.” Id., at 87.
In this case, Gary Cone, a Vietnam veteran sentenced to death, contends that the State of Tennessee violated his right to due process by suppressing witness statements and police reports that would have corroborated his trial defense and bolstered his case in mitigation of the death penalty. At his trial in 1982, Cone asserted an insanity defense, contending that he had killed two people while suffering from acute amphetamine psychosis, a disorder caused by drug addiction. The State of Tennessee discredited that defense, alleging that Cone’s drug addiction was “ ‘baloney.’ ” 492 F. 3d 743, 760 (CA6 2007) (Merritt, J., dissenting). Ten years later, Cone learned that the State had suppressed evidence supporting his claim of drug addiction.
Cone presented his new evidence to the state courts in a petition for postconviction relief, but the Tennessee courts *452 denied him a hearing on the ground that his Brady claim had been “previously determined,” id., at 753 (majority opinion), either on direct appeal from his conviction or in earlier collateral proceedings. On application for a writ of habeas corpus pursuant to 28 U. S. C. § 2254, the Federal District Court concluded that the state courts’ disposition rested on an adequate and independent state ground that barred further review in federal court, and the Court of Appeals for the Sixth Circuit agreed. Doubt concerning the correctness of that holding, coupled with conflicting decisions from other Courts of Appeals, prompted our grant of certiorari. 554 U. S. 916 (2008).
After a complete review of the trial and postconviction proceedings, we conclude that the Tennessee courts’ rejection of petitioner’s Brady claim does not. rest on a ground that bars federal review. Furthermore, although the District Court and the Court of Appeals passed briefly on the merits of Cone’s claim, neither court distinguished the materiality of the suppressed evidence with respect to Cone’s guilt from the materiality of the evidence with respect to his punishment. While we agree that the withheld documents were not material to the question whether Cone committed murder with the requisite mental state, the lower courts failed to adequately consider whether that same evidence was material to Cone’s sentence. Therefore, we vacate the decision of the Court of Appeals and remand the case to the District Court to determine in the first instance whether there is a reasonable probability that the withheld evidence would have altered at least one juror’s assessment of the appropriate penalty for Cone’s crimes.
I
On the afternoon of Saturday, August 10, 1980, Cone robbed a jewelry store in downtown Memphis, Tennessee. Fleeing the scene by car, he led police on a high-speed chase *453 into a residential neighborhood. Once there, he abandoned his vehicle and shot a police officer.[1] When a bystander tried to impede his escape, Cone shot him, too, before escaping on foot.
A short time later, Cone tried to hijack a nearby car. When that attempt failed (because the driver refused to surrender his keys), Cone tried to shoot the driver and a hovering police helicopter before realizing he had run out of ammunition. He then fled the scene. Although police conducted a thorough search, Cone was nowhere to be found.
Early the next morning, Cone reappeared in the same neighborhood at the door of an elderly woman. He asked to use her telephone, and when she refused, he drew a gun. Before he was able to gain entry, the woman slammed the door and called the police. By the time officers arrived, however, Cone had once again disappeared.
That afternoon, Cone gained entry to the home of 93-year-old Shipley Todd and his wife, 79-year-old Cleopatra Todd. Cone beat the couple to death with a blunt instrument and ransacked the first floor of their home. Later, he shaved his beard and escaped to the airport without being caught. Cone then traveled to Florida, where he was arrested several days later after robbing a drugstore in Pompano Beach.
A Tennessee grand jury charged Cone with two counts of first-degree murder, two counts of murder in the perpetration of a burglary, three counts of assault with intent to murder, and one count of robbery by use of deadly force. At his jury trial in 1982, Cone did not challenge the overwhelming physical and testimonial evidence supporting the charges against him. His sole defense was that he was not guilty by reason of insanity.
*454 Cone’s counsel portrayed his client as suffering from severe drug addiction attributable to trauma Cone had experienced in Vietnam. Counsel argued that Cone had committed his crimes while suffering from chronic amphetamine psychosis, a disorder brought about by his drug abuse. That defense was supported by the testimony of three witnesses. First was Cone’s mother, who described her son as an honorably discharged Vietnam veteran who had changed following his return from service. She recalled Cone describing “how terrible” it had been to handle the bodies of dead soldiers, and she explained that Cone slept restlessly and sometimes “holler[ed]” in his sleep. Tr. 1643-1645 (Apr. 20, 1982). She also described one occasion, following Cone’s return from service, when a package was shipped to him that contained marijuana. Before the war, she asserted, Cone had not used drugs of any kind.
Two expert witnesses testified on Cone’s behalf. Matthew Jaremko, a clinical psychologist, testified that Cone suffered from substance abuse and posttraumatic stress disorders related to his military service in Vietnam. Jaremko testified that Cone had expressed remorse for the murders, and he opined that Cone’s mental disorder rendered him substantially incapable of conforming his conduct to the law. Jonathan Lipman, a neuropharmacologist, recounted at length Cone’s history of illicit drug use, which began after Cone joined the Army and escalated to the point where Cone was consuming “rather horrific” quantities of drugs daily. App. 100. According to Lipman, Cone’s drug abuse had led to chronic amphetamine psychosis, a disorder manifested through hallucinations and ongoing paranoia that prevented Cone from obeying the law and appreciating the wrongfulness of his actions.
In rebutting Cone’s insanity defense the State’s strategy throughout trial was to present Cone as a calculating, intelligent criminal who was fully in control of his decisions and actions at the time of the crimes. A key component of that *455 strategy involved discrediting Cone’s claims of drug use.[2] Through cross-examination, the State established that both defense experts’ opinions were based solely on Cone’s representations to them about his drug use rather than on any independently corroborated sources, such as medical records or interviews with family or friends. The prosecution also adduced expert and lay testimony to establish that Cone was not addicted to drugs and had acted rationally and intentionally before, during, and after the Todd murders.
Particularly damaging to Cone’s defense was the testimony of rebuttal witness llene Blankman, who had spent time with Cone several months before the murders and at whose home Cone had stayed in the days leading up to his arrest in Florida. Blankman admitted to being a former heroin addict but testified that she no longer used drugs and tried to stay away from people who did. She testified that she had never seen Cone use drugs, had never observed track marks on his body, and had never seen him exhibit signs of paranoia.
Emphasizing the State’s position with respect to Cone’s alleged addiction, the prosecutor told the jury during closing argument, “[YJou’re not dealing with a crazy person, an insane man. A man . . . out of his mind. You’re dealing, I submit to you, with a premeditated, cool, deliberate — and even cowardly, really — murderer.” Tr. 2084 (Apr. 22, 1982). Pointing to the quantity of drugs found in Cone’s car, the prosecutor suggested that far from being a drug addict, Cone was actually a drug dealer. The prosecutor argued, “Pm not trying to be absurd, but he says he’s a drug addict. I say *456 balony. He’s a drug seller. Doesn’t the proof show that?” App. 107.[3]
The jury rejected Cone’s insanity defense and found him guilty on all counts. At the penalty hearing, the prosecution asked the jury to find that Cone’s crime met the criteria for four different statutory aggravating factors, any one of which would render him eligible for a capital sentence.[4] Cone’s counsel called no witnesses but instead rested on the evidence adduced during the guilt phase proceedings. Acknowledging that the prosecution’s experts had disputed the existence of Cone’s alleged mental disorder, counsel nevertheless urged the jury to consider Cone’s drug addiction when weighing the aggravating and mitigating factors in the case.[5] The jury found all four aggravating factors and unanimously returned a sentence of death.[6]
*457 II
On direct appeal Cone raised numerous challenges to his conviction and sentence. Among those was a claim that the prosecution violated state law by failing to disclose a tape-recorded statement and police reports relating to several trial witnesses. See id., at 114-117. The Tennessee Supreme Court rejected each of Cone’s claims, and affirmed his conviction and sentence. State v. Cone, 665 S. W. 2d 87 (1984).[7] Cone then filed a petition for postconviction relief, primarily raising claims that his trial counsel had been ineffective; the Tennessee Court of Criminal Appeals affirmed the denial of that petition in 1987. Cone v. State, 747 S. W. 2d 353.
In 1989, Cone, acting pro se, filed a second petition for postconviction relief, raising myriad claims of error. Among these was a claim that the State had failed to disclose evidence in violation of his rights under the United States Con *458 stitution. At the State’s behest, the postconvietion court summarily denied the petition, concluding that all the claims raised in it had either been “previously determined” or “waived.” Order Dismissing Petition for Post-Conviction Relief in Cone v. State, No. P-06874 (Crim. Ct. Shelby Cty., Tenn., Jan. 2,199Q).[8] At that time, the court did not specify which claims fell into which category.
Cone appealed the denial of his petition to the Tennessee Court of Criminal Appeals, asserting that the postconvietion court had erred by dismissing 13 claims — his Brady claim among them — as previously determined when, in fact, they had not been “previously addressed or determined by any court.” Brief for Petitioner-Appellant in No. P-06874, pp. 23-24, and n. 11. In addition Cone urged the court to remand the case to allow him, with the assistance of counsel, to rebut the presumption that he had waived any of his claims by not raising them at an earlier stage in the litigation. Id., at 24.[9] The court agreed and remanded the case for further proceedings.
On remand counsel was appointed, and an amended petition was filed. The State once again urged the postconvic *459 tion court to dismiss Cone’s petition. Apparently conflating the state-law disclosure claim Cone had raised on direct appeal with his newly filed Brady claim, the State represented that the Tennessee Supreme Court had already decided the Brady issue and that Cone was therefore barred from relitigating it. See App. 15-16.
While that petition remained pending before the postconvietion court, the Tennessee Court of Appeals held for the first time that the State’s Public Records Act allowed a criminal defendant to review the prosecutor’s file in his ease. See Capital Case Resource Center of Tenn., Inc. v. Woodall, No. 01-A-019104CH00150, 1992 WL 12217 (Jan. 29, 1992). Based on that holding, Cone obtained access to the prosecutor’s files, in which he found proof that evidence had indeed been withheld from him at trial. Among the undisclosed documents Cone discovered were statements from witnesses who had seen him several days before and several days after the murders. The witnesses described Cone’s appearance as “wild eyed,” App. 50, and his behavior as “real weird,” id., at 49. One witness affirmed that Cone had appeared “to be drunk or high.” Ibid. The file also contained a police report describing Cone’s arrest in Florida following the murders. In that report, a police officer described Cone looking around “in a frenzied manner,” and “walking in [an] agitated manner” prior to his apprehension. Id., at 53. Multiple police bulletins describing Cone as a “drug user” and a “heavy drug user” were also among the undisclosed evidence. See id., at 55-59.
With the newly discovered evidence in hand, Cone amended his postconviction petition once again in October 1993, expanding his Brady claim to allege more specifically that the State had withheld exculpatory evidence demonstrating that he “did in fact suffer drug problems and/or drug withdrawal or psychosis both at the time of the offense and in the past.” App. 20. Cone pointed to specific examples of evidence that had been withheld, alleging the evidence *460 was “exculpatory to both the jury’s determination of petitioner’s guilt and its consideration of the proper sentence,” and that there was “a reasonable probability that, had the evidence not been withheld, the jurors would not have convicted [him] and would not have sentenced him to death.” Id., at 20-21.[10] In a lengthy affidavit submitted with his amended petition, Cone explained that he had not raised his Brady claim in earlier proceedings because the facts underlying it “ha[d] been revealed through disclosure of the State’s files, which occurred after the first post-conviction proceeding.” App. 18.
After denying Cone’s request for an evidentiary hearing, the postconviction court denied relief on each claim presented in the amended petition. Many of the claims were dismissed on the ground that they had been waived by Cone’s failure to raise them in earlier proceedings; however, consistent with the position urged by the State, the court dismissed many others, including the Brady claim, as mere “re-statements of previous grounds heretofore determined and denied by the Tennessee Supreme Court upon Direct Appeal or the Court of Criminal Appeals upon the First Petition.” App. 22.
Noting that “the findings of the trial court in post-conviction hearings are conclusive on appeal unless the evidence preponderates against the judgment,” the Tennessee Court of Criminal Appeals affirmed. Cone v. State, 927 S. W. 2d 579, 581-582 (1995). The court concluded that Cone had “failed to rebut the presumption of waiver as to all claims raised in his second petition for post-conviction relief which had not been previously determined." Id., at 582 (emphasis added). Cone unsuccessfully petitioned for re *461 view in the Tennessee Supreme Court, and we denied certiorari. Cone v. Tennessee, 519 U. S. 934 (1996).
Ill
In 1997, Cone filed a petition for a federal writ of habeas corpus. Without disclosing to the District Court the contrary position it had taken in the state-court proceedings, the State acknowledged that Cone’s Brady claim had not been raised prior to the filing of his second postconviction petition. However, wrenching out of context the state appellate court’s holding that Cone had “waived ‘all claims ... which had not been previously determined,’ ” the State now asserted the Brady claim had been waived. App. 39 (quoting Cone, 927 S. W. 2d, at 582).
In May 1998, the District Court denied Cone’s request for an evidentiary hearing on his Brady claim. Lamenting that its consideration of Cone's claims had been “made more difficult” by the parties’ failure to articulate the state procedural rules under which each of Cone's claims had allegedly been defaulted, App. to Pet. for Cert. 98a, the District Court nevertheless held that the Brady claim was procedurally barred. After parsing the claim into 11 separate subclaims based on 11 pieces of withheld evidence identified in the habeas petition, the District Court concluded that Cone had waived each subclaim by failing to present or adequately develop it in state court. App. to Pet. for Cert. 112a-113a. Moreover, the court concluded that even if Cone had not defaulted his Brady claim, it would fail on its merits because none of the withheld evidence would have cast doubt on Cone’s guilt. App. to Pet. for Cert. 116a-119a. Throughout its opinion the District Court repeatedly referenced factual allegations contained in early versions of Cone’s second petition for post-conviction relief rather than the amended version of the petition upon which the state court’s decision had rested. See, e. g., id., at 112a.
*462 After the District Court dismissed the remainder of Cone’s federal claims, the Court of Appeals for the Sixth Circuit granted him permission to appeal several issues, including the alleged suppression of Brady material. Before the Court of Appeals, the State shifted its procedural default argument once more, this time contending that Cone had “simply never raised” his Brady claim in the state court because he failed to make adequate factual allegations to support that claim in his second petition for postconviction relief. App. 41. Repeating the District Court’s error, the State directed the Court of Appeals’ attention to Cone’s pro se petition and to the petition Cone’s counsel filed before he gained access to the prosecution’s case file. Id., at 41-42, and n. 7. In other words, instead of citing the October 1993 amended petition on which the state court’s decision had been based and to which its order explicitly referred, the State pointed the court to earlier, less developed versions of the same claim.
The Court of Appeals concluded that Cone had proeedurally defaulted his Brady claim and had failed to show cause and prejudice to overcome the default. Cone v. Bell, 243 F. 3d 961, 968 (2001). The court acknowledged that Cone had raised his Brady claim. 243 F. 3d, at 969. Nevertheless, the court considered itself barred from reaching the merits of the claim because the Tennessee courts had concluded the claim was “previously determined or waived under Tenn. Code Ann. §40-30-112.” Ibid.
Briefly mentioning several isolated pieces of suppressed evidence, the court summarily concluded that even if Cone’s Brady claim had not been defaulted, the suppressed evidence would not undermine confidence in the verdict (and hence was not Brady material) “because of the overwhelming evidence of Cone’s guilt.” 243 F. 3d, at 968, 969. The court did not discuss whether any of the undisclosed evidence was material with respect to Cone’s sentencing proceedings.
*463 Although the Court of Appeals rejected Cone’s Brady claim, it held that he was entitled to have his death sentence vacated because of his counsel’s ineffective assistance at sentencing. See 243 F. 3d, at 975. In 2002, this Court reversed that holding after concluding that the Tennessee courts’ rejection of Cone’s ineffective-assistance-of-eounsel claim was not “objectively unreasonable” within the meaning of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See Bell v. Cone, 535 U. S. 685, 699.
In 2004, following our remand, the Court of Appeals again entered judgment ordering a new sentencing hearing, this time based on the purported invalidity of an aggravating circumstance found by the jury. Cone v. Bell, 359 F. 3d 785. Again we granted certiorari and reversed, relying in part on the deferential standard that governs our review of state-court decisions under AEDPA. See Bell v. Cone, 543 U. S. 447, 452-458 (2005) (per curiam).
Following our second remand, the Court of Appeals revisited Cone’s Brady claim. This time, the court divided the claim into four separate subclaims: “(1) evidence regarding [Cone’s] drug use; (2) evidence that might have been useful to impeach the testimony and credibility of prosecution witness Sergeant Ralph Roby; (3) FBI reports;[11] and (4) evidence showing that prosecution witness llene Blankman was untruthful and biased.” 492 F. 3d, at 753. Noting that it had previously found all four subclaims to be proeedurally defaulted, the court declined to reconsider its earlier decision. See ibid, (citing Cone, 243 F. 3d, at 968-970). At the same time, the court reiterated that the withheld evidence “would *464 not have overcome the overwhelming evidence of Cone’s guilt in committing a brutal double murder and the persuasive testimony that Cone was not under the influence of drugs.” 492 F. 3d, at 756. Summarily discounting Cone’s contention that the withheld evidence was material with respect to his sentence, the court concluded that the introduction of the suppressed evidence would not have altered the jurors’ finding that Cone’s alleged drug use did not “vitiate his specific intent to murder his victims and did not mitigate his culpability sufficient to avoid the death sentence.” Id., at 757.
Judge Merritt dissented. He castigated the State not only for withholding documents relevant to Cone’s sole defense and plea for mitigation, but also for its “falsification of the procedural record ... concerning the State’s procedural default defense to the Brady claim.” Id., at 760. Over the dissent of seven judges, Cone’s petition for rehearing en banc was denied. 505 F. 3d 610 (2007).
We granted certiorari to answer the question whether a federal habeas claim is “ ‘procedurally defaulted’ ” when it is twice presented to the state courts. Pet. for Cert. i.
IV
During the state and federal proceedings below, the State of Tennessee offered two different justifications for denying review of the merits of Cone’s Brady claim. First, in connection with Cone’s amended petition for state postconviction relief, the State argued that the Brady claim was barred because it had been decided on direct appeal. See App. 15-16. Then, in connection with Cone’s federal habeas petition, the State argued that Cone’s claim was waived because it had never been properly raised before the state courts. See id,., at 39. The District Court and the Court of Appeals agreed that Cone’s claim was procedurally barred, but for different reasons. The District Court held that the claim *465 had been waived, App. to Pet. for Cert. 102a, while the Court of Appeals held that the claim had been either waived or previously determined, Cone, 243 F. 3d, at 969. We now conclude that neither prior determination nor waiver provides an independent and adequate state ground for denying Cone review of his federal claim.
It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court’s decision rests upon a state-law ground that “is independent of the federal question and adequate to support the judgment.” Coleman v. Thompson, 501 U. S. 722, 729 (1991); Lee v. Kemna, 534 U. S. 362, 375 (2002). In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to “ensur[e] that the States’ interest in correcting their own mistakes is respected in all federal habeas cases.” Coleman, 501 U. S., at 732. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of “an opportunity to address those claims in the first instance” and frustrates the State’s ability to honor his constitutional rights. Id., at 732,748. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court’s refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review. See id., at 731.
That does not mean, however, that federal habeas review is barred every time a state court invokes a procedural rule to limit its review of a state prisoner’s claims. We have recognized that “ ‘[t]he adequacy of state procedural bars to the assertion of federal questions’ ... is not within the State’s prerogative finally to decide; rather, adequacy ‘is itself a federal question.’” Lee, 534 U. S., at 375 (quoting Douglas v. *466 Alabama, 380 U. S. 415, 422 (1965)); see also Coleman, 501 U. S., at 736 (“[Fjederal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds”). The question before us now is whether federal review of Cone’s Brady claim is procedurally barred either because the claim was twice presented to the state courts or because it was waived, and thus not presented at all.
First, we address the contention that the repeated presentation of a claim in state court bars later federal review. The Tennessee postconviction court denied Cone’s Brady claim after concluding it had been previously determined following a full and fair hearing in state court. See Tenn. Code Ann. §40-30-112(a). That conclusion rested on a false premise: Contrary to the state courts’ finding, Cone had not presented his Brady claim in earlier proceedings, and, consequently, the state courts had not passed on it. The Sixth Circuit recognized that Cone’s Brady claim had not been decided on direct appeal, see Cone, 243 F. 3d, at 969, but felt constrained by the state courts’ refusal to reach the merits of that claim on postconviction review. The Court of Appeals concluded that because the state postconviction courts had applied a state procedural law to avoid reaching the merits of Cone’s Brady claim, “an ‘independent and adequate' state ground” barred federal habeas review. 243 F. 3d, at 969. In this Court the State does not defend that aspect of the Court of Appeals’ holding, and rightly so.
When a state court declines to review the merits of a petitioner’s claim on the ground that it has done so already, it creates no bar to federal habeas review. In Ylst v. Nunnemaker, 501 U. S. 797, 804, n. 3 (1991), we observed in passing that when a state court declines to revisit a claim it has already adjudicated, the effect of the later decision upon the availability of federal habeas is “nil” because “a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing *467 procedural default.”[12] When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court’s decision does not indicate that the claim has been procedurally defaulted. To the contrary, it provides strong evidence that the claim has already been given full consideration by the state courts and thus is ripe for federal adjudication. See 28 U. S. C. § 2254(b)(1)(A) (permitting issuance of a writ of habeas corpus only after “the applicant has exhausted the remedies available in the courts of the State”).
A claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration— not when the claim has been presented more than once. Accordingly, insofar as the Court of Appeals rejected Cone’s Brady claim as procedurally defaulted because the claim had been twice presented to the Tennessee courts, its decision was erroneous.
As an alternative (and contradictory) ground for barring review of Cone’s Brady claim, the State has argued that Cone’s claim was properly dismissed by the state postconviction court on the ground it had been waived. We are hot persuaded. The state appellate court affirmed the denial of Cone’s Brady claim on the same mistaken ground offered by the lower court — that the claim had been previously determined.[13] Contrary to the State’s assertion, the Tennessee *468 appellate court did not hold that Cone’s Brady claim was waived.
When a state court declines to find that a claim has been waived by a petitioner’s alleged failure to comply with state procedural rules, our respect for the state-court judgment counsels us to do the same. Although we have an independent duty to scrutinize the application of state rules that bar our review of federal claims, Lee, 584 U. S., at 375, we have no concomitant duty to apply state procedural bars where *469 state courts have themselves declined to do so. The Tennessee courts did not hold that Cone waived his Brady claim, and we will not second-guess their judgment.[14]
The State’s procedural objections to federal review of the merits of Cone’s claim have resulted in a significant delay in bringing this unusually protracted case to a conclusion. Ultimately, however, they provide no obstacle to judicial review. Cone properly preserved and exhausted his Brady claim in the state court; therefore, it is not defaulted. We turn now to the merits of that claim.
V
Although the State is obliged to “prosecute with earnestness and vigor,” it “is as much [its] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.” Berger, 295 U. S., at 88. Accordingly, we have held that when the State withholds from a criminal defendant evidence that is material to his guilt or punishment, it violates his right to due process of law in violation of the Fourteenth Amendment. See Brady, 373 U. S., at 87. In United States v. Bagley, 473 U. S. 667, 682 (1985) (opinion of Blackmun, J.), we explained that evidence is “material” within the meaning *470 of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. In other words, favorable evidence is subject to constitutionally mandated disclosure when it “could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.” Kyles v. Whitley, 514 U. S. 419, 435 (1995); accord, Banks v. Dretke, 540 U. S. 668, 698-699 (2004); Strickler v. Greene, 527 U. S. 263, 290 (1999).[15]
The documents suppressed by the State vary in kind, but they share a common feature: Each strengthens the inference that Cone was impaired by his use of drugs around the time his crimes were committed. The suppressed evidence includes statements by witnesses acknowledging that Cone appeared to be “drunk or high,” App. 49, “acted real weird,” ibid., and “looked wild eyed,” id., at 50, in the two days preceding the murders.[16] It also includes documents that could *471 have been used to impeach witnesses whose trial testimony cast doubt on Cone’s drug addiction. For example, Memphis police officer Ralph Roby testified at trial that Cone had no needle marks on his body when he was arrested — an observation that bolstered the State’s argument that Cone was not a drug user. The suppressed evidence reveals, however, that Roby authorized multiple teletypes to law enforcement agencies in the days following the murders in which he described Cone as a “drug user” and a “heavy drug user. ” See id., at 55-58.[17] A suppressed statement made by the chief of police of Cone’s hometown also describes Cone as a serious drug user. See Cone, 243 F. 3d, at 968. And undisclosed notes of a police interview with llene Blankman conducted several days after the murders reveal discrepancies between her initial statement and her trial testimony relevant to Cone’s alleged drug use. App. 72-73. In sum, both the quantity and the quality of the suppressed evidence lends support to Cone’s position at trial that he habitually used excessive amounts of drugs, that his addiction affected his behavior during his crime spree, and that the State’s arguments to the contrary were false and misleading.
*472 Thus, the federal question that must be decided is whether the suppression of that probative evidence deprived Cone of his right to a fair trial. See Agurs, 427 U. S., at 108. Because the Tennessee courts did not reach the merits of Cone’s Brady claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to “any claim that was adjudicated on the merits in State court proceedings.” 28 U. S. C. § 2254(d). Instead, the claim is reviewed de novo. See, e. g., Rompilla v. Beard, 545 U. S. 374, 390 (2005) (de novo review where state courts did not reach prejudice prong under Strickland v. Washington, 466 U. S. 668 (1984)); Wiggins v. Smith, 539 U. S. 510, 534 (2003) (same).
Contending that the Federal District Court and Court of Appeals adequately and correctly resolved the merits of that claim, the State urges us to affirm the Sixth Circuit’s denial of habeas relief. In assessing the materiality of the evidence suppressed by the State, the Court of Appeals suggested that two facts outweighed the potential force of the suppressed evidence. First, the evidence of Cone’s guilt was overwhelming. Second, the evidence of Cone’s drug use was cumulative because the jury had heard evidence of Cone’s alleged addiction from witnesses and from officers who interviewed Cone and recovered drugs from his vehicle.[18] The Court of Appeals did not thoroughly review the suppressed evidence or consider what its cumulative effect on the jury would have been. Moreover, in concluding that the suppressed evidence was not material within the meaning of Brady, the court did not distinguish between the materiality of the evidence with respect to guilt and the materiality of the evidence with respect to punishment — an omission we find significant.
*473 Evidence that is material to guilt will often be material for sentencing purposes as well; the converse is not always true, however, as Brady itself demonstrates. In our seminal case on the disclosure of prosecutorial evidence, defendant John Brady was indicted for robbery and capital murder. At trial, Brady took the stand and confessed to robbing the victim and being present at the murder but testified that his accomplice had actually strangled the victim. Brady v. State, 226 Md. 422, 425, 174 A. 2d 167, 168 (1961). After Brady was convicted and sentenced to death he discovered that the State had suppressed the confession of his accomplice, which included incriminating statements consistent with Brady’s version of events. Id., at 426, 174 A. 2d, at 169. The Maryland Court of Appeals concluded that Brady’s due process rights were violated by the suppression of the accomplice’s confession but declined to order a new trial on guilt. Observing that nothing in the accomplice’s confession “could have reduced... Brady’s offense below murder in the first degree,” the state court ordered a new trial on the question of punishment only. Id., at 430, 174 A. 2d, at 171. We granted certiorari and affirmed, rejecting Brady’s contention that the state court’s limited remand violated his constitutional rights. 373 U. S., at 88.
As in Brady, the distinction between the materiality of the suppressed evidence with respect to guilt and punishment is significant in this case. During the guilt phase of Cone’s trial, the only dispute was whether Cone was “sane under the law,” Tr. 2040 (Apr. 22, 1982), as his counsel described the issue, or “criminally responsible” for his conduct, App. 110, as the prosecutor argued. Under Tennessee law, Cone could not be held criminally responsible for the murders if, “at the time of [his] conduct as a result of mental disease or defect he laek[ed] substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.” Graham v. State, 547 S. W. 2d 531, 543 (Tenn. 1977). Although we take exception to the *474 Court of Appeals’ failure to assess the effect of the suppressed evidence “collectively” rather than “item by item,” see Kyles, 514 U. S., at 486, we nevertheless agree that even when viewed in the light most favorable to Cone, the evidence falls short of being sufficient to sustain his insanity defense.
Cone’s experts testified that his drug addiction and post-traumatic stress disorder originated during his service in Vietnam, more than 13 years before the Todds were murdered. During those years, despite Cone’s drug use and mental disorder, he managed to successfully complete his education, travel, and (when not incarcerated) function in civil society. The suppressed evidence may have strengthened the inference that Cone was on drugs or suffering from withdrawal at the time of the murders, but his behavior before, during, and after the crimes was inconsistent with the contention that he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. See Graham, 547 S. W. 2d, at 543. The likelihood that the suppressed evidence would have affected the jury’s verdict on the issue of insanity is therefore remote. Accordingly, we conclude that the Sixth Circuit did not err by denying habeas relief on the ground that the suppressed evidence was immaterial to the jury’s finding of guilt.
The same cannot be said of the Court of Appeals’ summary treatment of Cone’s claim that the suppressed evidence influenced the jury’s sentencing recommendation. There is a critical difference between the high standard Cone was required to satisfy to establish insanity as a matter of Tennessee law and the far lesser standard that a defendant must satisfy to qualify evidence as mitigating in a penalty hearing in a capital case. See Bell, 535 U. S., at 712 (Stevens, J., dissenting) (“[T]here is a vast difference between insanity— which the defense utterly failed to prove — and the possible mitigating effect of drug addiction incurred as a result of *475 honorable service in the military”). As defense counsel emphasized in his brief opening statement during penalty phase proceedings, the jury was statutorily required to consider whether Cone’s “capacity ... to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment.” Tenn. Code Ann. § 39 — 2—203(j)(8). It is possible that the suppressed evidence, viewed cumulatively, may have persuaded the jury that Cone had a far more serious drug problem than the prosecution was prepared to acknowledge, and that Cone’s drug use played a mitigating, though not exculpating, role in the crimes he committed.[19] The evidence might also have rebutted the State’s suggestion that Cone had manipulated his expert witnesses into falsely believing he was a drug addict when in fact he did not struggle with substance abuse.
Neither the Court of Appeals nor the District Court fully considered whether the suppressed evidence might have persuaded one or more jurors that Cone’s drug addiction— especially if attributable to honorable service of his country in Vietnam — was sufficiently serious to justify a decision to imprison him for life rather than sentence him to death. Because the evidence suppressed at Cone’s trial may well have been material to the jury’s assessment of the proper punishment in this case, we conclude that a full review of the suppressed evidence and its effect is warranted.
*476 VI
In the 27 years since Gary Cone was convicted of murder and sentenced to death, no Tennessee court has reached the merits of his claim that state prosecutors withheld evidence that would have bolstered his defense and rebutted the State’s attempts to cast doubt on his alleged drug addiction. Today we hold that the Tennessee courts’ procedural rejection of Cone’s Brady claim does not bar federal habeas review of the merits of that claim. Although we conclude that the suppressed evidence was not material to Cone's conviction for first-degree murder, the lower courts erred in failing to assess the cumulative effect of the suppressed evidence with respect to Cone’s capital sentence. Accordingly, the judgment of the Court of Appeals is vacated, and the case is remanded to the District Court with instructions to give full consideration to the merits of Cone’s Brady claim.

It is so ordered.

From the abandoned vehicle, police recovered stolen jewelry, large quantities of illegal and prescription drugs, and approximately $2,400 in cash. Much of the cash was later connected to a grocery store robbery that had occurred on the previous day.

 The State also cast doubt on Cone’s defense by eliciting testimony that Cone had enrolled in college following his return from Vietnam and had graduated with high honors. Later, after serving time in prison for an armed robbery, Cone gained admission to the University of Arkansas Law School. The State suggested that Cone's academic success provided further proof that he was not impaired following his return from war.

 In his closing rebuttal argument, the prosecutor continued to press the point, asserting; “There aren’t any charges for drug sales, but that doesn’t mean that you can’t look and question in deciding whether or not this man was, in fact, a drug user, or why he had those drugs. Did he just have those drugs, or did he have those drugs and thousands of dollars in that car? Among those drugs are there only the drugs he used? How do we know if he used drugs? The only thing that we ever had that he used drugs, period, is the fact that those drugs were in the car and what he told people. What he told people. But according to even what he told people, there are drugs in there he didn’t even use.” Tr. 2068 (Apr. 22, 1982).

 The jury could impose a capital sentence only if it unanimously determined that one or more statutory aggravating circumstances had been proved by the State beyond a reasonable doubt, and that the mitigating circumstances of the case did not outweigh any statutory aggravating factors. Tenn. Code Ann. §39-2-203(g) (1982).

 As defense counsel emphasized to the jury, one of the statutory mitigating factors it was required to consider was whether “[t]he capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was substantially impaired as a result of mental disease or defect or intoxication which was insufficient to establish a defense to the crime but which substantially affected his judgment.” §39-2-203(j)(8).

 Specifically, the jury found Cone had committed one or more prior felonies involving the use or threat of violence, see §39-2-203(i)(2); the mur *457 ders had been committed for the purpose of avoiding, interfering with, or preventing Cone’s lawful arrest or prosecution, see § 39 — 2—203(i)(6); the murders were especially heinous, atrocious, or cruel in that they involved torture and depravity of mind, see § 39 — 2—203(i)(5); and Cone had knowingly created a risk of death to two or more persons, other than the victim murdered, during his act of murder, see §39-2-203(i)(3). The Tennessee Supreme Court later observed that by finding Cone guilty of murder in the first degree during the perpetration of a burglary, the jury implicitly found the existence of an additional statutory aggravating factor: that the murders occurred while Cone was committing a burglary, § 39-2-203(i)(7). State v. Cone, 665 S. W. 2d 87, 94 (1984).

 In summarizing the trial proceedings the Tennessee Supreme Court observed: “The only defense interposed on [Cone’s] behalf was that of insanity, or lack of mental capacity, due to drug abuse and to stress arising out of his previous service in the Vietnamese war, some eleven years prior to the events involved in this case. This proved to be a tenuous defense, at best, since neither of the expert witnesses who testified on his behalf had ever seen or heard of him until a few weeks prior to the trial. Neither was a medical doctor or psychiatrist, and neither had purported to treat him as a patient. Their testimony that he lacked mental capacity was based purely upon his personal recitation to them of his history of military service and drug abuse.” Id., at 90.

 Under Tennessee law in effect at the time, a criminal defendant was entitled to collateral relief if his conviction or sentence violated “any right guaranteed by the constitution of [Tennessee] or the Constitution of the United States.” Tenn. Code Ann. §40-30-105 (1982); see also §40-30-102. Any hearing on a petition for postconvietion relief was limited, however, to claims that had not been “waived or previously determined.” See § 40-30-111. A ground for relief was “previously determined” if “a court of competent jurisdiction ha[d] ruled on the merits [of the claim] after a full and fair hearing.” §40-30-112(a). The claim was waived “if the petitioner knowingly and understanding^ failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.” § 40-30-112(b)(l).

 See Swanson v. State, 749 S. W. 2d 731, 734 (Tenn. 1988) (courts should not dismiss postconvietion petitions on technical grounds unless the petitioner has first had “reasonable opportunity, with aid of counsel, to file amendments” and rebut presumption of waiver (internal quotation marks omitted)).

 As examples of evidence that had been withheld, Cone pointed to “statements of Charles and Debbie Slaughter, statements of Sue Cone, statements of Lucille Tuech, statements of Herschel Dalton, and patrolman Collins” and “statements contained in official police reports.” App. 20.

11 In the course of federal habeas proceedings, Cone had obtained access to files from the Federal Bureau of Investigation where he found additional previously undisclosed evidence not contained in the state prosecutor’s case file. The suppressed FBI documents make repeated reference to Cone’s drug use and corroborate his expert’s representation that he had used drugs diming his prior incarceration for armed robbery. See App. 26-28.

 With the exception of the Sixth Circuit, all Courts of Appeals to have directly confronted the question both before and after Ylst, 501 U. S. 797, have agreed that a state court’s successive rejection of a federal claim does not bar federal habeas review. See, e. g., Page v. Frank, 343 F. 3d 901, 907 (CA7 2003); Brecheen v. Reynolds, 41 F. 3d 1343, 1358 (CA10 1994); Bennett v. Whitley, 41 F. 3d 1581, 1582 (CA5 1994); Silverstein v. Henderson, 706 F. 2d 361, 368 (CA21983). See also Lambright v. Stewart, 241 F. 3d 1201, 1206 (CA9 2001).

 As recounted earlier, Cone’s state postconviction petition contained numerous claims of error. The state postconviction court dismissed some of those claims as waived and others, including the Brady claim, as having been previously determined. In affirming the denial of Cone’s petition *468 the Tennessee Court of Criminal Appeals summarily stated that Cone had “failed to rebut the presumption of waiver as to all claims raised in his second petition for post-conviction relief which had not been previously determined.” Cone v. State, 927 S. W. 2d 579, 582 (1995). Pointing to that language, the State asserts that the Tennessee Court of Criminal Appeals denied Cone’s Brady claim not because it had been previously determined, but because it was waived in the postconviction court proceedings. Not so. Without questioning the trial court’s finding that Cone’s Brady claim had been previously determined, the Court of Criminal Appeals affirmed the denial of Cone’s postconviction petition in its entirety. Nothing in that decision suggests the appellate court believed the Brady claim had been waived in the court below.
Similarly, while Justice Alito’s parsing of the record persuades him that Cone failed to adequately raise his Brady claim to the Tennessee Court of Criminal Appeals, he does not argue that the court expressly held that Cone waived the claim. A review of Cone’s opening brief reveals that he made a broad challenge to the postconviction court’s dismissal of his petition and plainly asserted that the court erred by dismissing claims as previously determined on direct appeal or in his initial postconviction petition. See Brief for Petitioner-Appellant in No. 02-C-01-9408-CR-00052 (Term. Crim. App.), pp. 7, 14. The state appellate court did not state or suggest that Cone had waived his Brady claim. Rather, after commending the postconviction court for its “exemplary and meticulous treatment of the appellant’s petition,” Cone, 927 S. W. 2d, at 581, the appellate court simply adopted without modification the lower court’s findings with respect to the application of Tenn. Code Ann. §40-30-112 to the facts of this case. The best reading of the Tennessee Court of Criminal Appeals’ decision is that it was based on an approval of the postconviction court's reasoning rather than on an unmentioned failure by Cone to adequately challenge the dismissal of his Brady claim on appeal.

 Setting aside the state courts’ mistaken belief that Cone’s Brady claim had been previously determined, there are many reasons the state courts might have rejected the State’s waiver argument. The record establishes that the suppressed documents which form the basis for Cone’s claim were not available to him until the Tennessee Court of Appeals’ 1992 decision interpreting the State’s Public Records Act as authorizing the disclosure of prosecutorial records. Soon after obtaining access to the prosecutor’s file and discovering within it documents that had not been disclosed prior to trial, Cone amended his petition for postconviction relief, adding detailed allegations regarding the suppressed evidence recovered from the file, along with an affidavit explaining the reason why his claim had not been filed sooner. See App. 13,18. The State did not oppose the amendment of Cone’s petition on the ground that it was untimely, and it appears undisputed that there would have been no basis under state law for doing so. See Brief for Petitioner 7, n. 1.

 Although the Due Process Clause of the Fourteenth Amendment, as interpreted by Brady, only mandates the disclosure of material evidence, the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations. See Kyles, 514 U. S., at 437 (“[T]he rule in Bagley (and, hence, in Brady) requires less of the prosecution than the ABA Standards for Criminal Justice____ See . .. Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993)”). See also ABA Model Rule of Professional Conduct 3.8(d) (2008) (“The prosecutor in a criminal case shall” “make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal”). As we have often observed, the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure. See Kyles, 514 U. S., at 439; United States v. Bagley, 473 U. S. 667, 711, n. 4 (1985) (Stevens, J., dissenting); United States v. Agurs, 427 U. S. 97, 108 (1976).

 The State contends that the statements were made by witnesses who observed Cone during and immediately after he committed robberies; therefore, it is not surprising that Cone appeared less than “serene.” See *471 Brief for Respondent 46. Although a jury would have been free to infer that Cone’s behavior was attributable to his criminal activity, the evidence is also consistent with Cone’s assertion that he was suffering from chronic amphetamine psychosis at the time of the crimes.

 As the dissent points out, Roby did not testify directly that Cone was not a drug user, and FBI Agent Eugene Flynn testified that, at the time of Cone’s arrest in Pompano Beach, Cone reported that he had used cocaine, Dilaudid, and Demerol and was suffering from “‘slight withdrawal symptoms.’” See post, at 492-493, 496 (opinion of Thomas, J.). See also Tr. 1916,1920 (Apr. 22,1982). It is important to note, however, that neither Flynn nor Roby corroborated Cone’s account of alleged drug use. Taken in context, Roby’s statement that he had not observed any needle marks on Cone’s body invited the jury to infer that Cone’s self-reported drug use was either minimal or contrived. See id,., at 1939. Therefore, although the suppressed evidence does not directly contradict Roby’s trial testimony, it does place it in a different light.

 In pointing to the trial evidence of Cone’s drug use, the Court of Appeals made no mention of the fact that the State had discredited the testimony of Cone’s experts on the ground that no independent evidence corroborated Cone’s alleged addiction and that the State had argued that the drugs in Cone’s car were intended for resale, rather than personal use.

 We agree with the dissent that the standard to be applied by the District Court in evaluating the merits of Cone’s Brady claim on remand is whether there is a reasonable probability that, had the suppressed evidence been disclosed, the result of the proceeding would have been different. See post, at 491. Because neither the District Court nor the Court of Appeals considered the merits of Cone’s claim with respect to the effect of the withheld evidence on his sentence, it is appropriate for the District Court, rather than this Court, to do so in the first instance.