**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TROY SMITH, | No.   15-16819 |
| Petitioner-Appellant, | D.C. No. 3:11-cv-01791-SI |
| v. | |
| KEVIN CHAPPELL, Warden, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted September 14, 2016
San Francisco, California

Before:  W. FLETCHER, CHRISTEN, and FRIEDLAND, Circuit Judges.

In California state court, Smith was convicted of second degree robbery,

false imprisonment, second degree burglary, and conspiracy to commit robbery.

He was sentenced to twenty-six years in prison.  Smith later filed a habeas corpus

petition in federal court in which he argued that the evidence was insufficient to

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

support his conviction. Shortly thereafter, pursuant to a *Pitchess* motion, Smith received approximately 300 pages of potential *Brady* material from the personnel file of a San Francisco Police Department (SFPD) inspector who was heavily involved in the investigation of his case, and who testified extensively at trial. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Pitchess v. Superior Court*, 522 P.2d 305 (Cal. 1974), *superseded by statute*, Cal. Penal Code §§ 832.7, 832.8, Cal. Evid. Code §§ 1043–45. The material revealed that, six years before the robbery, Inspector Gardner was involved in a cheating scandal relating to an SFPD officer's examination. A police commission disciplined Gardner for lying to investigators and failing to properly report a leak of exam scenarios and answers. He was suspended for ninety days, was placed on probation for five years, and remained on probation during the robbery investigation. Following this disclosure, the district court granted Smith's motion to amend his federal petition to add a claim under *Brady,* and stayed his federal proceedings so Smith could exhaust his new claim in state court. The state court denied relief.

When Smith returned to federal court, he moved for additional discovery related to his *Brady* claim. The district court denied the motion as futile, and denied Smith's habeas petition on the merits. The district court granted a certificate of appealability on Smith's *Brady* claim and on the denial of his

2

discovery motion, and Smith timely appealed. This court has jurisdiction under 28 U.S.C. § 2253. We affirm.

1. *Brady v. Maryland* is the clearly established law governing the only habeas claim Smith raises on appeal. 373 U.S. 83 (1963). The State does not dispute that evidence of Inspector Gardner's misconduct during the testing scandal was favorable to Smith and suppressed by the State. This is a wise concession: "That [Gardner] was disciplined for lying on the job obviously bears on his credibility," *see Milke v. Ryan*, 711 F.3d 998, 1007 (9th Cir. 2013), and there is no question that this evidence "was suppressed by the government," *see United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013). The sole question before us is whether the testing scandal evidence was material.

Withheld "evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different." *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (quoting *Cone v. Bell*, 556 U.S. 449, 469–70 (2009)). The California Superior Court's ruling that the testing scandal evidence was not material under *Brady* was not "contrary to . . . clearly established Federal law" nor based on "an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d). Although the evidence would have been highly probative impeachment material, it was not unreasonable

3

for the state court to conclude that there is not a reasonable probability that any change in the way the jurors viewed Gardner's testimony would have changed the jury's verdict. *See Gonzalez v. Wong*, 667 F.3d 965, 982 (9th Cir. 2011) (outlining two-step inquiry to evaluate materiality when withheld evidence relates to witness's credibility, including (1) "whether . . . there was a reasonable probability that the new evidence would have changed the way in which the jurors viewed" the witness's testimony, and (2) "whether . . . there was a reasonable probability that this change would have resulted in a different verdict").

The State presented physical evidence linking Smith to the crime scene, including a *Chronicle* newspaper Gardner found at 1 Tillman Place, the location of the robbery, two days after the crime. Smith's fingerprints were found on the newspaper, and the State argued that it placed Smith at the crime scene on the morning of the robbery. The newspaper was particularly strong evidence because: (1) fingerprints of co-defendant George Turner, who was arrested with $650,000 worth of the jewelry store's inventory, were on the paper along with Smith's; (2) the newspaper was from the day of the robbery, April 7, and trial testimony established that it was a special early edition available only from news racks in San Francisco (not Oakland, where Smith lived); and (3) video evidence showed one

4

perpetrator arriving at 1 Tillman Place on the morning of the robbery carrying a newspaper.

Smith argues that Gardner planted the *Chronicle* newspaper at 1 Tillman Place on April 9. But at oral argument, Smith's counsel could not articulate a plausible theory explaining how Gardner could have planted this particular edition of the newspaper with the two sets of fingerprints on it. George Turner was not yet a suspect on April 9 when Gardner allegedly obtained the *Chronicle* from Smith's apartment. Assuming Gardner visited Smith's Oakland apartment on April 9, he would have had to be incredibly lucky to abscond with a newspaper that had not been available for purchase in Oakland that included both Smith's and Turner's prints.

In light of the strength of the evidence against Smith, the state court reasonably concluded that general impeachment evidence against Gardner was not material under *Brady*. The state court's rejection of the *Brady* claim was thus not "contrary to . . . clearly established Federal law" nor based on "an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d).

2. The district court did not abuse its discretion in denying Smith's request for discovery on his Gardner-related *Brady* claim. Under Rule 6(a) of the Federal Rules Governing Section 2254 Cases, a district court "may, for good cause,

5

authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief" the petitioner has shown "good cause" and discovery is warranted. *Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) (per curiam) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)).

The district court denied Smith's motion for additional discovery for two reasons. First, the court ruled that Smith was not entitled to additional discovery under *Cullen v. Pinholster*, 563 U.S. 170 (2011). *Pinholster* held "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 181. The record on appeal does not reveal exactly what was presented to the California Superior Court for in camera review in conjunction with the *Pitchess* motion, and the parties dispute whether the state court reviewed Gardner's entire file, including attachments to the testing scandal disciplinary report. Under California law, "[w]hen a party brings a *Pitchess* motion, the trial court is required to keep a record of what it reviewed to provide meaningful appellate review." *People v. Superior Court*, 377 P.3d 847, 861 (Cal. 2015). The record in this court does not indicate whether the California

6

Superior Court followed this procedure, and counsel did not know whether the state court did.[1]  We agree with Smith that *Pinholster* might not bar discovery in another case where the record reveals *Brady* material was not presented to the state court for in camera review.  However, here, the district court did not err by denying discovery because there is no plausible theory under which the requested discovery could be material to Smith's case.

As the district court explained, even with additional evidence related to the testing scandal, Smith would not have been able to show he was entitled to relief under *Brady*.  We agree with this independent basis for denying discovery.  Smith did not articulate any reason to believe that the materials he seeks contain significantly different evidence from the materials he has already obtained.  And,

---

[1]      The district attorney asked the Superior Court "to conduct an in camera review of [Gardner's] personnel file or relevant portions thereof" in its motion.  "When a trial court concludes a defendant's *Pitchess* motion shows good cause for discovery of relevant evidence contained in a law enforcement officer's personnel files, the custodian of the records is obligated to bring to the trial court all potentially relevant documents to permit the trial court to examine them for itself." *People v. Mooc*, 36 P.3d 21, 30 (Cal. 2001) (internal quotation marks and citations omitted).  "The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion." *Id.* Here, the record contains a minute order from the Superior Court acknowledging the district attorney's request for in camera review, but does not include findings or a written order from the court in response to the *Pitchess* motion.  Our record does not otherwise reveal the scope of the Superior Court's review.

7

as explained above, the materials he has obtained are not material under *Brady*. Smith did not present a plausible account of how Gardner could have planted the special early edition of the *Chronicle* with both Turner's and Smith's fingerprints at the crime scene. Absent such an account, we are not left with "grave doubt," *Kotteakos v. United States*, 328 U.S. 750, 765 (1946), that additional facts about the testing scandal six years prior to the robbery would have made a difference to the outcome of this case. Therefore, the district court did not err in ruling that Smith failed to show good cause for additional discovery under Rule 6(a).

**AFFIRMED.**