304 Ga. 813
FINAL COPY

S18A1621. LEWIS v. THE STATE.

BLACKWELL, Justice.

Anthony Bernard Lewis was tried by a Fulton County jury and convicted

of murder and the unlawful possession of a firearm in connection with the

shooting of Brandon Jones. Lewis appeals, claiming that the State violated his

right to due process when it failed to disclose allegedly exculpatory evidence

that it obtained while investigating a separate murder. See Brady v. Maryland,

373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963). We find no reasonable

probability that the allegedly exculpatory evidence at issue would have affected

the verdicts reached at Lewis's trial, and we therefore affirm.[1]

---

[1] Jones was killed on October 8, 2010. On January 18, 2011, a Fulton County grand jury indicted Lewis, charging him with malice murder, felony murder, aggravated assault, and the unlawful possession of a firearm during the commission of a felony. Lewis's trial began on August 6, 2012, and the jury found him guilty of all charges on August 9. On August 22, 2012, Lewis was sentenced to imprisonment for life for malice murder and imprisonment for a consecutive term of five years for the unlawful possession of a firearm. The verdict as to felony murder was vacated by operation of law, and the aggravated assault merged into the malice murder. See Malcolm v. State, 263 Ga. 369, 372-373 (4), (5) (434 SE2d 479) (1993). Lewis filed a timely motion for new trial on September 12, 2012, and he amended it on April 21, 2016. The trial court denied the motion on December 12, 2017, and Lewis filed a timely notice of appeal on January 3, 2018. Lewis's appeal

1. Viewed in the light most favorable to the verdicts, the evidence shows that Jones's Atlanta apartment was burglarized around the end of September 2010. Soon thereafter, Lewis came to Jones's apartment and angrily accused him of saying that Lewis had been involved in the burglary. Around 3:00 a.m. on October 8, Jones was fatally shot 23 times in the parking lot outside his apartment, likely with an AK-47 or similar assault rifle.

In their investigation, police officers spoke to a woman whose apartment overlooked the parking lot where the shooting occurred. The woman told the investigators that she heard the gunshots and recognized Lewis standing over Jones's body. She knew Lewis as "Little Ant," which was a nickname apparently based on his height. (Lewis is around 5'4" tall.) The woman saw Lewis take something from Jones's right hand and then run toward another building in the apartment complex. Over the next few months, the woman was contacted three times by Lewis's sister, who passed along messages from Lewis that urged the woman to say that she saw "somebody tall" shoot Jones and that asked her not to "come to court." Police investigators also spoke to another woman who reported that she had seen Lewis with a "chopper" (which is a street

was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

2

name for an AK-47) a few hours before the shooting and that she heard him threaten Jones. And other residents of the apartment complex who witnessed the shooting reported that the assailant was wearing a "bubble" coat similar to the one worn by Lewis.

Lewis was arrested, and a jailhouse phone call with his girlfriend was recorded in January 2011. The girlfriend previously had told police that Lewis was with her on the night Jones was killed. However, in the recorded phone call, Lewis instructed his girlfriend about what she should tell police, he praised her for not "fold[ing] under pressure," and he noted that the police were trying to "catch [her] in [her] lie" about the alibi she provided for him.

Later, police spoke to two other men who said they saw Lewis shoot Jones. First, a drug dealer named Jamri Pamodei Ogoun spoke to police while he was incarcerated pending trial in a separate murder case. Ogoun told investigators that he was at Jones's apartment complex on the night of the shooting. He identified Lewis as the shooter, and he testified that he spoke to Lewis later that morning and that Lewis admitted to the murder. About two weeks later, another resident of Jones's apartment complex (who also had a criminal background and who testified that he, in fact, had planned to kill Jones

on the day Jones was murdered) told investigators that he observed the shooting. This man identified Lewis as the gunman, and he also said he observed Lewis reach down and grab something from Jones's body before he ran off.

At trial, Lewis claimed that it was Ogoun who had killed Jones. Lewis's mother (who also resided at the same apartment complex) testified that she actually observed the shooting, that she saw a tall man standing over Jones's body, and that this person looked at least "a little bit" like Ogoun. And another neighbor testified that she observed that the shooter was "tall" ("about 5'8" or 5'9"") and that she recognized him as Ogoun.[2]

Lewis does not dispute that the evidence is sufficient to sustain his convictions. But consistent with our usual practice in murder cases, we independently have reviewed the record to assess the legal sufficiency of the evidence. We conclude that the evidence presented at trial, when viewed in the light most favorable to the verdicts, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Lewis was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B)

---

[2] This neighbor acknowledged that she never spoke to the police about what she saw and testified only that she had told "somebody" about her identification of Ogoun at some point while she was visiting the apartment of Lewis's mother.

4

(99 SCt 2781, 61 LE2d 560) (1979).

2. Lewis's sole allegation on appeal is that the State failed to disclose evidence that would have allowed him to show that Ogoun had a motive to kill Jones, and that the suppression of this evidence violated his right to due process. See Brady, 373 U. S. at 87 ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

Seven months prior to Lewis's trial, the Fulton County District Attorney was provided evidence in the case of three men charged with killing Ladeddrick Love on September 13, 2010, in Atlanta. Included within the approximately 400 pages of investigatory documents about the Love murder was a somewhat-cryptic, two-paragraph summary of an interview conducted with Ogoun about a week after Love's murder (and just a few weeks before Jones was killed).[3] During that interview, Ogoun told the officer investigating Love's murder that Jones was "good friends" with a man named Roderick Reese and that Reese

---

[3] The summary describes an interview with "Mr. Wari Ogoun," but it appears undisputed that Wari Ogoun and Jamri Pamodei Ogoun are the same person.

5

believed that Love had stolen drugs from him, perhaps with assistance from Ogoun. According to the summary of Ogoun's interview, Ogoun believed Reese had put a hit on Love, Ogoun felt his life was in danger (apparently based upon his perceived association with Love), and Jones and his brother had threatened Ogoun in some unspecified way. According to Lewis, the failure of the State to disclose the summary of Ogoun's interview with the officer investigating Love's murder violated his right to due process under <u>Brady</u>.

To succeed with this claim, Lewis "must demonstrate that the prosecution wilfully or inadvertently suppressed evidence favorable to [him], either because it is exculpatory or impeaching." <u>Jones v. Medlin</u>, 302 Ga. 555, 557 (807 SE2d 849) (2017) (punctuation omitted) (citing to <u>Brady</u>, 373 U. S. at 87). In addition, Lewis is entitled to a new trial only if the evidence is "*material* to [his] guilt or punishment." <u>Turner v. United States</u>,      U. S.      (137 SCt 1885, 198 LE2d 443) (2017) (emphasis in original). When Lewis presented his <u>Brady</u> claim in his motion for new trial, the trial court determined that the summary of Ogoun's interview with the police was neither exculpatory to Lewis nor material to his guilt or punishment.

First, we note that the somewhat-confusing nature of the summary of

6

Ogoun's interview (and the fact that Ogoun was not called as a witness to explain the summary at the hearing on Lewis's motion for new trial) makes it difficult to determine that the summary was exculpatory to Lewis. However, even if we were to assume that Lewis has demonstrated the favorability of the evidence at issue (and that the evidence was unavailable to him), he has failed to show that it was material to his guilt or punishment. "[E]vidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Cone v. Bell, 556 U. S. 449, 469-470 (129 SCt 1769, 173 LE2d 701) (2009). "A 'reasonable probability' of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." Turner, 137 SCt at 1893 (II) (A) (citation and punctuation omitted); see also Jones, 302 Ga. at 561 (2) (same). And, in order to determine the materiality of the suppressed evidence, we must evaluate that evidence "in the context of the entire record." Turner, 137 SCt at 1893 (II) (A) (citation and punctuation omitted).

Here, evidence that Ogoun believed Jones's friend (Reese) had put a hit on Love (who was associated in some way with Ogoun) and that Jones had

threatened Ogoun (perhaps on behalf of Reese and as a result of Ogoun's association with Love) might have been used to attack Ogoun's credibility at trial or perhaps to suggest that Ogoun had a motive to harm Jones. But viewed in the context of the entire record, it does not seem likely that such evidence would have affected the jury's verdict.

As to impeachment of Ogoun, Lewis *was* able to thoroughly impeach Ogoun's testimony at trial. Ogoun acknowledged that he was facing trial in a separate murder case (not involving Love), that he was on probation for other offenses for which he had been convicted, that he was a drug dealer who was selling drugs on the night of Jones's murder, and that he did not inform the police that he witnessed Jones's murder for around 18 months (by which time he had been charged with the separate murder). And Lewis was able to suggest that Ogoun provided testimony against him in order to receive some benefit from the State in his own pending trial. It is likely that the jury understood that both Ogoun and the other man who identified Lewis as the shooter about two weeks after Ogoun (and who testified that he had planned to kill Jones on the day Jones was murdered) had been impeached and that their testimony was of limited credibility. As a result, Lewis has not shown that the jury would have

8

credited Ogoun's testimony differently if it had known about some conflict between Ogoun and Jones based upon Ogoun's association with Love.

Similarly, Lewis has not shown that the outcome of his trial would have been affected had he been able to use the summary of Ogoun's interview with the police officer investigating Love's murder to show that Ogoun had a motive to kill Jones. Because Ogoun was not called as a witness at the hearing on Lewis's motion for new trial (and because of the somewhat-cryptic nature of the summary), we do not know how Ogoun would have responded to questioning about any statements referenced in the summary, and it is not clear that the summary would have provided *any* support for Lewis's claim that Ogoun killed Jones. The fact that Reese was not one of the three men charged with Love's murder suggests that Love's death had nothing to do with any conflict that Ogoun perceived between Reese and Love. As a result, any connection between Jones's death and a perceived conflict between Ogoun and Jones (based on their associations with Reese and Love, respectively) becomes even more tenuous.

Moreover, nothing in the summary of Ogoun's interview with the police investigator calls into question the testimony of the witnesses who observed Lewis threaten Jones just before Jones's murder (including one witness who saw

9

Lewis with a "chopper"), the testimony of the other witnesses who observed Jones's shooting and its aftermath (particularly the neighbor whose apartment overlooked the parking lot where the shooting occurred, who appeared to have no reason to fabricate her identification), or the incriminating recording of Lewis's jailhouse phone call. In the context of the entire record, the summary of Ogoun's interview with the police officer who was investigating the Love murder is not reasonably likely to have affected the verdicts, and the trial court did not err when it determined that the evidence at issue was not material to Lewis's guilt or punishment. See Turner, 137 SCt at 1893 (II) (A).

Judgment affirmed. All the Justices concur.

Decided December 10, 2018.

Murder. Fulton Superior Court. Before Judge Brasher.

Steven E. Phillips, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Marc A. Mallon, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.