J-A32006-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROD MATTHEWS | |
| Appellant | No. 415 EDA 2013 |

Appeal from the Judgment of Sentence September 21, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009582-2010

BEFORE:  PANELLA, J., OLSON, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                **FILED MAY 26, 2015**

Appellant, Rod Matthews, appeals from the judgment of sentence entered September 21, 2012, in the Court of Common Pleas of Philadelphia County.  We vacate the judgment of sentence and remand for further proceedings.

We take the pertinent facts of this case from the trial court's opinion.

> Philadelphia Police Detective John Palmiero testified that on May 12, 2010, he had been a police officer for approximately seven years and had been involved in hundreds of narcotics arrests.  (N.T., 6/12/12, pgs. 40, 57)  On this date Detective Palmiero[ ] was on routine patrol in full uniform as a passenger in a marked police vehicle with his [p]artner, Police Officer Confesor Nieves, in the vicinity of the Lindbergh Avenue and 62nd Street in the City of Philadelphia, which he described as a "high crime area."  (N.T., 6/12/12, pgs. 40-42, 60)  At approximately

---

[*] Former Justice specially assigned to the Superior Court.

11:30 p.m., he observed [Matthews] yelling "call up the block" and making hand gestures towards a female across the street from him. (N.T., 6/12/12, pgs. 42-43, 45) As she turned to approach, [Matthews] gestured again to her and began to cross the street in her direction. (N.T., 6/12/12, pg. 44) After engaging in a brief conversation, they started walking away from Detective Palmiero's patrol car. Believing "there was a possible drug sale in progress," he and his partner made a U-turn to investigate further. (N.T., 6/12/12, pgs. 46, 50) As they approached, he "observed [Matthews] reaching into his right front pants pocket [as the female was reaching into her purse with her right hand. At that time] both of them looked in our direction and began to walk off in separate directions at a very fast pace." (N.T., 6/12/12, pgs. 46, 50)

As Detective Palmiero exited his patrol car, he called to [Matthews], "Where are you going? At that time he puts his hand in a fast manner into his right front pants pocket and kind of crouches down in a fast manner behind an SUV that is right there, which happens to be out of my line of sight." (N.T., 6/12/12, pg. 51) Fearing [Matthews] may have had a handgun, Detective Palmiero ordered him to take his hand out of his pocket. In response, [Matthews] quickly removed it and then jammed it back in. On forcibly removing his hand from his pocket, Detective Palmiero discovered [Matthews] was holding an orange prescription bottle containing multiple packets containing a chunky substance which he recognized as crack cocaine. (N.T., 6/12/12, pgs. 51, 52, 61) [Matthews] was then taken into custody by the officers, at which time they also recovered $29 in cash and two cell phones from his pockets. (N.T., 6/12/12, pgs. 54, 55) Detective Palmiero also testified that he did not recover any drug paraphernalia used in the consumption of drugs. (N.T., 6/12/12, pgs. 57, 62)

Detective Palmiero testified that the orange bottle contained "38 small blue-tinted heat-sealed baggies, and three clear in color heat-sealed baggies," for a total of 41 baggies. It was stipulated by and between counsel that a chemical analysis of four of the 38 blue tinted packets recovered, performed by a chemist with the police chemistry laboratory, tested positive for cocaine base…. It was further stipulated that a chemical analysis of one of the three clear packets of white powder tested positive for cocaine. It was also stipulated that the narcotics recovered weighed a total of 2.085 grams. (N.T., 6/12/12, pg. 94)

Trial Court Opinion, 11/22/13, at 4-6.

Matthews was charged with, *inter alia*, Possession with Intent to Deliver a Controlled Substance[1] ("PWID") and Possession of a Controlled Substance.[2] Matthews filed a suppression motion, which the trial court denied following a hearing. A jury convicted Matthews of the simple possession charge, but was unable to reach a verdict on the PWID charge. The trial court subsequently declared a mistrial. Following a second jury trial, a jury convicted Matthews of PWID.

Matthews filed a Post-Verdict Motion for Extraordinary Relief, arguing that the Commonwealth had allegedly withheld evidence favorable to the defense in violation of the United States Supreme Court's decision in **Brady v. Maryland**, 373 U.S. 83 (1963). Specifically, Matthews claimed that the Commonwealth withheld statements made by Officers Palmiero and Nieves during the course of an Internal Affairs investigation, that Matthews was extremely intoxicated when he was arrested. Matthews argued that such evidence would have corroborated his claim that he possessed the drugs for personal use, impeached the officers' claims that Matthews did not look like a drug user at the time of his arrest, and provided a basis for cross-examination of the Commonwealth's narcotics expert witness.

---

[1] 35 P.S. § 780-113(a)(30).
[2] 35 P.S. § 780-113(a)(16).

At sentencing, Matthews sought to introduce evidence in support of his motion for extraordinary relief. The trial court accepted into evidence the full report of the Internal Affairs investigation containing Officers Palmiero and Nieves' statements under the stipulation Matthews had not been provided with the investigation until two weeks after trial. *See* N.T., 9/21/12 at 8-10, 12. Matthews also attempted to call Philadelphia Police Officer James Johnson, the Commonwealth's narcotics expert from Matthews's first trial, to testify that "had he seen those documents and those statements, he would not have testified [at trial] that the drugs were possessed with the intent to deliver." *Id*. at 14. The trial court refused to permit Officer Johnson to testify, denied the motion and sentenced him to three years' probation. Matthews filed a timely Post-Sentence Motion for New Trial and New Motion to Suppress Evidence, which was later denied by operation of law. This timely appeal followed.

Matthews raises the following issues for our review.

1. Did the trial court err in refusing to grant a new trial inasmuch as the Commonwealth violated its duty pursuant to *Brady v. Maryland* by failing to disclose exculpatory evidence until after trial, specifically, written statements given by testifying police officers during an Internal Affairs investigation, where this withheld evidence substantially undermined confidence in the jury's verdict, where the failure to disclose this evidence violated appellant's rights to due process, and where the interests of justice required a new trial, and did not the trial court err in refusing to allow appellant to call a witness in support of his motion for a new trial?

2. Did the Commonwealth violate its duty under *Brady* by failing to provide, prior to the litigation of a motion to suppress physical evidence, the identity of an eyewitness to appellant's arrest, Helena Mooney, who would have contradicted the testimony of the Commonwealth's witness and who was, in fact, called by the defense at trial once her identity was revealed, and did not the trial court err in refusing to order that the motion accordingly be granted or to grant a new suppression hearing and new trial based on this evidence?

3. Did the trial court err in denying appellant's challenge, pursuant to *Batson v. Kentucky*, to the Commonwealth's racially discriminatory use of peremptory strikes, and in refusing to grant a new trial on the same grounds?

4. Did the Commonwealth improperly claim, in its closing argument to the jury, that the defense's failure to impeach Commonwealth witnesses indicated that any prior statements of those witnesses must have been consistent with their trial testimony as it constituted impermissible bolstering and burden-shifting, and did the trial court err in rejecting appellant's request for a curative instruction?

5. Was it improper for the trial court to instruct the jury that, if the Commonwealth had met its burden of proving the defendant guilty beyond a reasonable doubt, the jury "must" find him guilty, thereby violating appellant's right to due process of law pursuant to the United States and Pennsylvania Constitutions?

6. Did the trial court err in refusing to grant appellant's motion for a new trial, where the verdict was against the weight of the evidence and a new trial was necessary in the interests of justice?

Appellant's Brief at 4-5.

Under **Brady**, "a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature." **Commonwealth v. Spotz**, 18 A.3d 244, 275-276 (Pa. 2011) (citation omitted). To prove a **Brady**

violation, the defendant bears the burden of demonstrating that: "(1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant." *Commonwealth v. Koehler*, 36 A.3d 121, 133 (Pa. 2012) (citation omitted). To establish prejudice, the defendant must prove that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891 (1997) (citation omitted); *see also*, *Commonwealth v. Bomar*, 104 A.3d 1179, 1189 (Pa. 2014) ("Stated differently, the undisclosed evidence must be 'material to guilt or punishment.'") (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1130 (Pa. 2011) (citation omitted).

We further note:

In determining whether a reasonable probability of a different outcome has been demonstrated, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is shown when the government's suppression of evidence undermines confidence in the outcome of the trial. The United States Supreme Court has made clear that [the] materiality standard is not a sufficiency of the evidence test. A *Brady* violation is established by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Importantly, the mere possibility that an item of undisclosed

- 6 -

information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. In order to be entitled to a new trial for failure to disclose evidence affecting a witness's credibility, the defendant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence.

*Id*. (citation omitted).

Instantly, it is undisputed that the statements made by Officers Palmieri and Nieves during the Internal Affairs Investigation were in the Commonwealth's continuous possession and were not provided to Matthews until *after* he was convicted. Matthews argues that the statements in question were material and exculpatory in that they would have been admissible to not only impeach the officers' testimony and that of the Commonwealth's narcotics expert, but also as substantive evidence of his drug use.

In support of his argument that the statements were "material" for *Brady* purposes, Matthews directs our attention to the United States Supreme Court's decision in *Cone v. Bell*, 556 U.S. 449 (2009). In *Cone*, the appellant argued that the State of Tennessee violated his due process rights when it suppressed witness statements and police reports that would have corroborated his insanity defense at trial and bolstered his case in mitigation of the death penalty. Specifically, Cone asserted at trial that he killed two people while suffering from chronic amphetamine psychosis, a disorder caused by drug addiction. In rebutting Cone's evidence of addiction, the Commonwealth portrayed Cone not as a drug user, but as a

drug dealer.[3] The jury rejected the insanity defense, convicted Cone of first-degree murder and related counts, and sentenced him to death.

Ten years after his conviction, Cone discovered that the State had suppressed evidence supporting his claim of drug addiction in violation of ***Brady***. The evidence included witness statements describing Cone's behavior before and after the killings as "real weird" and his appearance as "wild eyed," as if he were "high or on drugs." 556 U.S. at 459 (citations omitted). A police report prepared contemporaneous to Cone's arrest also contained statements in which a police officer described Cone as looking around "in a frenzied manner," and "walking in [an] agitated manner" prior to his apprehension. ***Id***.

On federal habeas review, the United States Supreme Court determined that the undisclosed evidence undoubtedly strengthened the inference that Cone was impaired by the use of drugs around the time the murders were committed, and could have been used to impeach the testimony at trial that cast doubt on Cone's drug addiction. ***See id***. at 470-471. The Court ultimately held that, given the high standard Cone was required to satisfy to establish an insanity defense, the evidence would not likely have altered the jury's verdict on the issue of insanity. ***See id***. at 474.

_____

[3] The prosecutor argued, "I'm not trying to be absurd, but he says he's a drug addict. I say baloney. He's a drug seller. Doesn't the proof show that?" ***Cone***, 556 U.S. at 455-456.

Notably, however, the Court concluded that for sentencing purposes, the suppressed evidence "may have persuaded the jury that Cone had a far more serious drug problem than the prosecution was prepared to acknowledge, and that Cone's drug use played a mitigating, though not exculpating, role in the crimes he committed." *Id*. at 475. Finding that neither the District Court nor the Court of Appeals fully assessed the cumulative effect of the suppressed evidence with respect to Cone's capital sentence, the Court remanded the case to the District Court to consider whether the evidence was material to the jury's assessment of the proper punishment in that case.

We agree with Matthews that the case presented in *Cone* is substantially similar to this case. At trial, Matthews argued in his defense that he had a serious substance abuse problem and that he possessed the cocaine for personal use. The Commonwealth rebutted this defense with the arresting officers' testimony that Matthews did not look like a typical drug user when he was arrested because he appeared to be stocky and healthy, and the Commonwealth continued this argument in closing. *See* N.T., Jury Trial, 6/12/12 at 80-81; N.T., Jury Trial, 6/13/12 at 127-131. The withheld evidence disclosed after Matthews's conviction consisted of statements made by Officer Palmiero that "Mr. Matthews was so intoxicated on the night of this incident, that he doesn't recall what transpired, or who he actually interacted with," and Officer Nieves' statement that "it seemed like

[Matthews] may have been under the influence of something" at the time of his arrest. *See* Defense Post-Verdict Motion for Extraordinary Relief, 9/11/12, Exhibits A and B.

In light of this undisclosed evidence, we agree that there is a possibility that the evidence of Matthews's severe intoxication at the time of his arrest could have caused the jury to conclude that the possession of the crack cocaine was for his personal use, rather than with the intent to sell. This evidence may have impeached both the arresting officers' testimony that Matthews did not appear to be a crack addict and the testimony of the Commonwealth's narcotics expert that he possessed the drugs with the intent to deliver. It also strengthened his claims of drug abuse.

In light of the trial court's refusal to hear Officer Johnson's[4] testimony as to whether the withheld evidence actually caused him to change his opinion regarding Matthews's intent to deliver the drugs, we conclude that a full review of the cumulative effect of this evidence and its materiality with respect to Matthews's PWID conviction is warranted. Accordingly, we vacate the judgment of sentence and remand this case for full consideration of the

_____

[4] Officer Johnson did not testify at the second trial, at which Matthews was convicted of the PWID charge, and the trial court refused to hear his testimony on that basis. *See* N.T., Sentencing, 9/21/12 at 13-14. However, as Officer Johnson did testify as the Commonwealth's narcotics expert at Matthews's first trial, *prior* to the time the Commonwealth disclosed the officers' statements, his testimony as to whether this withheld evidence actually altered his opinion of Matthews's intent to deliver the cocaine is still undoubtedly relevant to the materiality of the evidence for **Brady** purposes.

merits of Matthews's **Brady** claim and of the undisclosed evidence. If the trial court determines that Matthews has established a **Brady** violation, it is to order a retrial. If the trial court determines that Matthews has failed to establish a **Brady** violation, it shall reinstate the judgment of sentence.

As the resolution of this issue on remand may potentially necessitate a new trial in this matter, thus rendering the remaining claims moot, we defer an examination of those issues at this time, without prejudice to Matthews's right to re-raise these claims on direct appeal in the future.

Judgment of sentence vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Olson joins in the memorandum.

Justice Fitzgerald files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2015