Filed 1/5/16  P. v. Lopez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>RUFO LOPEZ,<br><br>　　　　Defendant and Appellant. | B257670<br><br>(Los Angeles County<br>Super. Ct. No. VA121388) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County.
Brian F. Gasdia, Judge.  Affirmed as modified.

　　　　Richard D. Miggins, under appointment by the Court of Appeal, for Defendant
and Appellant.

　　　　Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney
General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Tannaz
Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

　　　　　　　　　　　_____

Rufo Lopez (Lopez) was charged with five counts of sexual intercourse or sodomy with a child under 10 years old (Pen. Code, § 288.7, subd. (a); counts 1-5);[1] three counts of aggravated sexual assault of a child—rape (§ 269, subd. (a)(1); counts 6, 7, 12); two counts of aggravated sexual assault of a child—sexual penetration (§ 269, subd. (a)(5); counts 8, 9); and two counts of aggravated sexual assault of a child—sodomy (§ 269, subd. (a)(3)); (counts 10, 11).

Counts 1 through 5 were dismissed. Lopez was convicted on the remaining seven counts. He was sentenced to state prison for a total of 105 years to life calculated as follows: consecutive terms of 15 years to life as to each count. He received presentence custody credit for 1,057 days of actual custody, plus 158 days of conduct credits, for a total credit of 1,215 days.

On appeal, Lopez argues: counts 10 and 11 must be reversed because there was insufficient evidence that he committed sodomy; the trial court denied Lopez of his due process right to present a defense when it limited the testimony of the defense's DNA expert; defense counsel's acquiescence to the trial court's ruling regarding the DNA expert was ineffective assistance of counsel; the prosecutor committed misconduct by repeatedly asking him whether the investigating detective had lied when testifying; Lopez was denied his due process right to a fair trial when the trial court failed to follow the mandatory requirements of section 868.5 and admonish the victim's support person not to prompt, sway or influence the victim; defense counsel provided ineffective assistance when he failed to request that the trial court comply with section 868.5; the trial court erred when it failed to instruct the jury with Alternative B in CALCRIM No. 121 regarding its obligation to only consider the English translation of a recording of an interview of Lopez conducted in Spanish; defense counsel provided ineffective assistance by failing to request Alternative B in CALCRIM No. 121; and Lopez is entitled to one more day of presentence custody credit.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

We shall order the judgment modified to reflect that Lopez is entitled to one more day of presentence custody credit.

In all other respects, we affirm.

**FACTS**

**Prosecution Evidence**

M.B. (the minor) was born in 2000. Her mother's boyfriend, Lopez, moved into the family house when the minor was about nine years old.[2]

At times when the minor was alone with Lopez, he engaged in various sexual acts with her. Those acts included: He rubbed her vagina with his finger or his penis; on more than 20 occasions, he put his fingers inside her vagina; on more than 30 occasions, he put his penis inside her vagina; he rubbed her "butt"; and at different times he put his fingers and his penis in her "butt."

On one occasion, the minor's brother walked into his mother's bedroom and saw the minor with Lopez. Her pants and panties were down. Lopez's pants were down. The minor's brother thought Lopez had just taken his index finger out of the minor's vagina. According to the minor, Lopez had placed his penis on her vagina, and was about to put it inside.

Malinda Wheeler (Nurse Wheeler) is a registered nurse and a family nurse practitioner who has performed over 800 sexual assault examinations. She examined the minor on August 25, 2011, at the request of the Los Angeles County Sheriff's Department. She asked the minor "if there was genital vaginal contact penetration by a penis" and the minor said "weenie." Also, she said there was contact between her vagina and a finger. Regarding the associated pain, the minor said, "Bad." The minor indicated that there was kissing on the mouth. When asked if ejaculation occurred, she said, "'Clear water comes out. He tells me to clean up with paper. Thr[o]w it in the trash.'" According to the minor, Lopez told her not to tell anyone or he would get mad and not buy her things. In her notes, Nurse Wheeler wrote that the minor said, "Sex means to

---

[2] Pursuant to section 868.5, a support person was with the minor during her testimony.

3

rape a girl." Continuing on, Nurse Wheeler wrote: "Told me that this started when she was in fourth grade. Usually happened at 6:00 p.m. after [Lopez] got home from work. Happens almost every day but not always." The minor said, "He put his weenie inside," and then pointed to the "butt picture and vaginal picture part" on a diagram that Nurse Wheeler used to facilitate her interview. After that, the minor added, "He touched inside my private part."

Before seeing Nurse Wheeler, the minor took a shower, used body wipes and changed clothes. Nurse Wheeler searched for dried semen on the minor's body with a hand-held ultra-violet light but did not find any. According to Nurse Wheeler, the minor's hymen was intact. This did not suggest one way or the other whether there was penetration. The idea that a female's hymen is broken due to penetration is a myth.

Through a certified Spanish interpreter, Detective John Carlin of the Los Angeles Sheriff's Department interviewed Lopez. Detective Carlin told Lopez that his DNA was found on the minor's body and asked how many times he had sex with the minor. Lopez said, "Well, we didn't have sex like penetration." Asked if his penis went into her vagina all the way or something else, Lopez used his thumb and forefinger to indicate his penis went in a half inch.

The jury heard the audio recording of the interview, and they had a side-by-side English and Spanish transcription. In that interview, Lopez said he did not force the minor. She wanted to do the things they did. He was asked how many times "it" happened, and he said, "Just five."

**Defense Evidence**

Stephanie Sandoval (Sandoval), a senior criminalist working for the Los Angeles County Sheriff's Department, completed a biological evidence examination report regarding Lopez and the minor based on evidence collected by others. That evidence included sexual assault kits containing DNA samples taken from the minor's genitals and Lopez's genitals, and the evidence also included a shirt, a pair of jeans and two pairs of underwear belonging to the minor. There was blood on one pair of underwear. Sandoval

forwarded her report and "analysis samples" to Jill Soumis (Soumis) so that she could conduct DNA analysis.

Defense counsel read the following stipulation to the jury: "It is hereby stipulated that if senior criminalist, . . . Soumis, of the Los Angeles County Sheriff's Department . . . were duly called and sworn to testify, she would testify that she performed a [DNA] analysis of items received from the evidence inventory laboratory . . . and determined" that no male DNA was detected on a vulva sample or a vestibule sample. The minor was excluded as a contributor to various DNA samples obtained from Lopez's genitals.

## DISCUSSION

**I. Sufficiency of the Evidence Regarding Counts 10 and 11.**

According to Lopez, there was insufficient evidence of anal penetration to support his convictions on counts 10 and 11 for aggravated sexual assault of a child due to acts of sodomy. As we discuss below, the convictions were supported by sufficient evidence and must therefore be affirmed.

A. Standard of Review.

"'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]' [Citation.] All conflicts in the evidence and questions of credibility are resolved in favor of the verdict, drawing every reasonable inference the jury could draw from the evidence. [Citation.] Reversal on this ground is unwarranted unless "'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" [Citation.] This standard applies whether direct or circumstantial evidence is involved." (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 841.)

B. Evidence Sufficient.

Section 269, subdivision (a)(3) provides: "Any person who commits any of the following acts upon a child who is under 14 years of age and seven or more years younger than the person is guilty of aggravated sexual assault of a child: [¶] . . . [¶]

5

(3) Sodomy, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 286." Sodomy "is sexual conduct consisting of contact between the penis of one person and the anus of another person. Any sexual penetration, however slight, is sufficient to complete the crime of sodomy." (§ 286, subd. (a).) Pursuant to section 286, subdivisions (c)(2) and (3), specific penalties are prescribed for persons who commit an act of sodomy on a child under 14 years of age by means of force, fear, violence, duress, menace, fear of immediate and unlawful bodily injury, or threats to retaliate in the future against the victim or any other person. Under subdivision (d), section 286 sets forth a specific penalty for "[a]ny person who, while voluntarily acting in concert with another person, either personally or aiding and abetting that other person, commits an act of sodomy upon a victim who is under 14 years of age, when the act is accomplished against the victim's will by means of force or fear of immediate and unlawful bodily injury on the victim or another person[.]"

At trial, the minor was asked, "Did [Lopez] ever do anything to your butt?" She said that he did, and when asked what that was, she said, "Rub and put his penis in." According to the minor, she knew Lopez put his penis in "[b]ecause it would hurt[.]" The prosecutor asked if Lopez "put it in a lot or a little?" The minor said, "A lot." Later, the prosecutor asked if the minor knew the different "between rubbing . . . against your private parts and going inside?" The minor answered, "Yes." Nurse Wheeler testified that she interviewed and examined the minor. After the minor was shown a diagram of the front and back of a woman's body, she said, "He put his weenie inside." Then she pointed to the picture of the anus and the picture of the vagina. She said, "He touched inside my private part."

This evidence was sufficient to establish anal penetration beyond a reasonable doubt. We are not persuaded to the contrary by Lopez's assertion that the minor's testimony "at best established only the possibility of penile penetration, with digital penetration being just as likely." When the minor testified, she said Lopez put his fingers inside her anus and vagina at times, and at other times he put his penis inside. Thus, the

6

minor's testimony revealed that she knew the difference between penile and digital penetration.

## II.  The Limitation on Lopez's DNA Expert.

According to Lopez, the trial court infringed on his right to present a defense because it limited Sandoval's testimony regarding Soumis's report.  Also, Lopez contends that he received ineffective assistance of counsel because defense counsel acquiesced to the limitations on Sandoval's testimony.  Contrary to what Lopez suggests, the record establishes that his right to present a defense was not infringed, and he was not prejudiced by defense counsel's performance.

A.  <u>Standard of Review</u>.

When, as here, a case involves a question that implicates constitutional rights and is predominantly legal, a reviewing court examines the issues de novo.  (*People v. Sully* (1991) 53 Cal.3d 1195, 1253.)

B.  <u>Relevant Proceedings</u>.

During trial, defense counsel informed the trial court Soumis was not available to testify regarding her report on the DNA analysis, and that he planned to call a different criminalist.  The prosecutor argued that having another criminalist testify regarding Soumis's report might be barred by *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305 (*Melendez-Diaz*).  The trial court asked defense counsel for an offer of proof regarding the substance of Soumis's report.  Defense counsel explained that Soumis prepared a report that explained DNA analysis methods and provided a table of DNA analysis results.  He then went on to read portions of Soumis's report to the trial court.

The trial court stated:  "Okay.  You avoid *Melendez-Diaz* if you have a stipulation just to say, 'If this witness was called, this is what she would say.'  [¶]  If you have that stipulation . . . entered prior to [Sandoval testifying], you can certainly ask questions" about DNA.  According to the trial court, a stipulation could "be either as general or as specific as you need it to be[.]"  It could state that Soumis is a senior criminalist.  It could list the samples that were collected, then state that Soumis examined the samples that were collected and generated a report.  Sandoval could authenticate the report by saying,

7

"Yes, I did collect these samples. Yes, I've seen the report, and this is what the report says." The trial court asked defense counsel to draft a stipulation that would include Soumis's name, her qualifications as an expert, the results of the analysis she conducted on the evidence collected by Sandoval, the fact that the results were in a four-page report, and that the four-page report would be referred to during direct and cross-examination.

The stipulation was read to the jury. Immediately afterwards, Sandoval was called to the witness stand.

On direct examination, Sandoval testified that DNA can be transferred via bodily fluids such as sperm and saliva, and that it can also be transferred through the skin by touching. She was asked about a report she prepared, and she said it was an inventory of evidence contained in sexual assault kits, one from the minor and one from Lopez. Sandoval analyzed the evidence for the presence of blood, semen or saliva. There was blood on one pair of the minor's underwear. There was no blood or semen on other items of her clothing.

Next, Sandoval testified that Soumis prepared a DNA analysis report. Sandoval was asked to give a general description of the report's various concepts. At one point, Sandoval was asked to look at page two of Soumis's report. This prompted a *Melendez-Diaz* objection from the prosecutor, who argued that Sandoval "can't testify to the report." At sidebar, the prosecutor asserted that defense counsel could ask Sandoval to speak in "general terms" but could not "go through and explain the actual test results." Nonetheless, the trial court allowed defense counsel to continue. He proceeded to question Sandoval regarding various concepts in Soumis's report.

On redirect examination, defense counsel asked Sandoval questions regarding DNA transference on skin. She said it was possible for DNA to be transferred from one person to another without sexual contact.[3]

---

[3]     *Melendez-Diaz* involved a Sixth Amendment Confrontation Clause challenge to the admission into evidence of affidavits "reporting the results of forensic analysis which showed that material seized by the police and connected to the defendant was cocaine." (*Melendez-Diaz, supra*, 557 U.S. at p. 307.) The court reiterated that the Sixth

C.  Forfeiture.

In essence, the trial court precluded Sandoval from providing an independent opinion regarding the meaning of the DNA analysis done by Soumis.  But defense counsel did not object.  Consequently, Lopez forfeited his challenge to the trial court's ruling.  (*People v. Chism* (2014) 58 Cal.4th 1266, 1293.)

D.  No Constitutional Error.

Despite Lopez's forfeiture, we have nonetheless reviewed his claim.

A defendant is denied a fair trial in violation of due process requirements when a trial court excludes relevant evidence that has significant probative value to his defense.  (*People v. Babbitt* (1988) 45 Cal.3d 660, 684.)

In urging us to find a constitutional deprivation, Lopez argues that *Crawford*, *supra*, 541 U.S. 36 does not bar a DNA expert from offering opinions on tests performed by others.  He then argues that the "trial court's ruling . . . caused the defense to present evidence in a form it did not want, [] placed limitations on the presentation of the evidence, barred [him] from making an effective challenge to the prosecution's case[,] and prevented [him] from presenting crucial evidence in violation of the state and federal constitutions."  Next, he contends that "Sandoval was entitled to offer opinion testimony based on her scientific review of [Soumis's] report.  *Melendez-Diaz* did not apply, and

_____

Amendment to the United States Constitution "provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'"  (*Melendez-Diaz*, *supra*, 557 U.S. at p. 309.)  It went on to note:  "In [*Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*)], after reviewing the Clause's historical underpinnings, we held that it guarantees a defendant's right to confront those 'who "bear testimony"' against him. [Citation.]  A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. [Citation.]" (*Melendez-Diaz*, at p. 309.)  The *Melendez-Diaz* court explained that out of court statements that are testimonial in nature trigger the confrontation clause.  It then concluded that the affidavits at issue were testimonial, and that they therefore should have been excluded.  The judgment against the defendant was reversed.  (*Melendez-Diaz,* at pp. 310, 328.)  As is apparent from *Melendez-Diaz*, the Sixth Amendment does not give the government a right to confront witnesses.  Therefore, the prosecutor's *Melendez-Diaz* objection was improper.

9

the restrictions placed on [Lopez] by the trial court were improper." This argument achieves nothing because it fails to demonstrate that the trial court excluded evidence that had significant probative value to Lopez's defense. This case hinged on the testimony of the minor and her brother, and on Lopez's admissions regarding his sex crimes. Further, we note that Soumis's report established that none of Lopez's DNA was found on the minor's genitals, and none of the minor's DNA was found on Lopez's genitals. The prosecutor did not offer any evidence suggesting that Lopez's DNA had been found on the minor or her clothing. Thus, there was no basis for the jury to conclude otherwise. Anything more that Sandoval could have said on this undisputed point would not have had significant probative value. The bottom line is that Lopez was permitted to present his defense, which was that the absence of DNA evidence proved that he did not sexually abuse the minor.

E. No Ineffective Assistance of Counsel.

"Ineffective assistance of counsel under the Sixth Amendment entails deficient performance under an objective standard of professional reasonableness and prejudice under a similarly objective standard of a reasonable probability of a more favorable outcome in the absence of the deficient performance. [Citation.]" (*People v. Cole* (2004) 33 Cal.4th 1158, 1202, fn. 11 (*Cole*).)

Lopez has made no showing that he was prejudiced by defense counsel's performance. This was not a DNA case. Rather, the prosecutor's case was based on the statements of the minor and her brother, and on Lopez's admissions. In any event, the jury got to hear that, per Soumis's report, none of Lopez's DNA was found on the minor, and none of her DNA was found on Lopez. Thus, there was no reasonable probability of a more favorable outcome if the trial court had allowed Sandoval to provide expert opinion regarding Soumis's report.

## III. The Prosecutor's Conduct.

During cross-examination, the prosecutor asked Lopez if he thought Detective Carlin was untruthful when testifying in a manner different from Lopez. Lopez contends

10

that this was prosecutorial misconduct mandating reversal. As we explain below, the prosecutor did not engage in misconduct.

A. Standard of Review.

A claim of prosecutorial misconduct is subject to independent review. (*People v. Uribe* (2011) 199 Cal.App.4th 836, 860.)

B. Relevant Proceedings.

Detective Carlin testified that he interviewed Lopez through a Spanish interpreter, and Lopez admitted to having sex with the minor. Though Detective Carlin did not speak Spanish, he explained that he understood and spoke "some words." He was asked if he attempted to interview Lopez at any time prior to the interview during which he spoke to Lopez through the interpreter. Detective Carlin said, "No, I don't believe so."

When Lopez testified, he said he and Detective Carlin spoke twice. The first time, they spoke in Spanish for 20 to 30 minutes. According to Lopez, Detective Carlin identified himself "as a worker for the kids. . . . [¶] He told me that he knew about my case. . . . And he said, 'I know that you are a good person. I know that you are innocent, but I want you to help me because there are kids that have gone through . . . what you are being accused of.'" Lopez said Detective Carlin repeatedly asked for help to "make a program." At some point, Lopez "accepted" because he did not know he was in trouble and thought he had nothing to lose. Soon after, they had a second conversation in the presence of a "lady officer" and Lopez admitted to sex acts with the minor.

During cross-examination, the prosecutor and Lopez had the following exchange:

"[PROSECUTOR:] And did you hear the Detective testify that he doesn't speak Spanish?

"[LOPEZ:] Yes, he said he doesn't speak Spanish.

"[PROSECUTOR:] The question was 'yes' or 'no.' Okay. So are you saying that when Detective Carlin testified that he doesn't speak Spanish, he was being untruthful?

"[DEFENSE COUNSEL:] Your Honor, that's speculation on [Lopez's] part.

"[TRIAL COURT:] Overruled.

"[LOPEZ:] What was the question again?

11

"[PROSECUTOR:] So are you saying that when Detective [Carlin] testified that he does not speak Spanish, was he being untruthful?

"[LOPEZ:] No, I'm not saying that.

"[PROSECUTOR:] Well, . . . you say you and he spoke in this first conversation for 30 minutes; right?

"[LOPEZ:] Yes. More or less 30 minutes.

"[PROSECUTOR:] So his Spanish had to be good enough to engage you in a 30-minute conversation; right?

"[LOPEZ:] Not very good, but I talked before with people like that, . . . and we understand each other and he actually asked if I understood him and I said 'yes.'

"[PROSECUTOR:] So his Spanish was good enough to discuss aspects of this program, tell you that he helped kids . . . . ? Is that what he allegedly told you?

"[LOPEZ:] Yes."

C. Forfeiture.

To preserve a claim of prosecutorial misconduct, a defendant must object and request that the jury be admonished to disregard the impropriety. (*People v. Riggs* (2008) 44 Cal.4th 248, 298.) The failure to request an admonition is excused if the request would have been futile. (*People v. Chatman* (2006) 38 Cal.4th 344, 380 (*Chatman*).) Lopez contends that the issue of prosecutorial misconduct was preserved below because defense objected to one of the prosecutor's questions as speculative and the objection was overruled, rendering a request for an admonition futile. Pursuant to *Chatman*, we are in limited agreement. The objection is preserved to the extent Lopez claims that the questioning was speculative. (*Ibid*.) However, under *Chatman*, all other objections Lopez raises on appeal are barred.

D. No Prosecutorial Misconduct.

Under federal law, prosecutorial misconduct is conduct that so infects the trial with unfairness as to make the resulting conviction a denial of due process. (*People v Wallace* (2008) 44 Cal.4th 1032, 1070.) Pursuant to state law, there is misconduct when

12

a prosecutor uses deceptive or reprehensible methods to attempt to persuade the trial court or the jury. (*Ibid.*)

When a prosecutor asks a defendant if another witness was lying, the trial court must consider the question in context to determine if there was misconduct. (*Chatman*, *supra*, 38 Cal.4th at p. 381.) "If a defendant has no relevant personal knowledge of the events, or of a reason that a witness may be lying or mistaken, he might have no relevant testimony to provide. No witness may give testimony based on conjecture or speculation. [Citation.] Such evidence is irrelevant because it has no tendency in reason to resolve questions in dispute. [Citation.]" (*Id.* at p. 382.) That said, "[t]he permissible scope of cross-examination of a defendant is generally broad. 'When a defendant voluntarily testifies, the district attorney may fully amplify his testimony by inquiring into the facts and circumstances surrounding his assertions, or by introducing evidence through cross-examination which explains or refutes his statements or the inferences which may necessarily be drawn from them. [Citation.] A defendant cannot, by testifying to a state of things contrary to and inconsistent with the evidence of the prosecution, thus indirectly denying the testimony against him, but without testifying expressly with relation to the same facts, limit the cross-examination to the precise facts concerning which he testifies. [Citation.]' [Citation.]" (*Ibid.*) "A defendant who is a percipient witness to the events at issue has personal knowledge whether other witnesses who describe those events are testifying truthfully and accurately. As a result, he might also be able to provide insight on whether witnesses whose testimony differs from his own are intentionally lying or are merely mistaken." (*Ibid.*)

*Chatman* establishes that a defendant's answer to an inquiry about whether other witnesses were lying "could be relevant to the credibility of both the defendant and the other witnesses." (*Chatman*, *supra*, 38 Cal.4th at p. 382.) Thus, such an inquiry is sometimes permissible.

Here, when Lopez testified that he spoke to Detective Carlin twice, and that the first conversation was conducted in Spanish, Lopez implicitly accused Detective Carlin of lying about the level of his Spanish language skills. (*Chatman*, *supra*, 38 Cal.4th at

13

p. 382 ["In challenging a witness's testimony, a party implicitly or explicitly urges that because a witness is lying, mistaken, or incompetent, the witness should not be believed"].) Considering the context, the prosecutor's questions were of a type permitted by *Chatman* to clarify Lopez's position regarding Detective Carlin's ability to speak and understand Spanish. (*Id*. at p. 382 ["A party who testifies to a set of facts contrary to the testimony of others may be asked to clarify what his position is and give, if he is able, a reason for the jury to accept his testimony as more reliable"].) Moreover, the prosecutor did not elicit speculation. Lopez claimed that he had a 20 to 30 minute conversation in Spanish with Detective Carlin in which they discussed whether Lopez would help out with a program for kids. Thus, he implicitly claimed to have personal knowledge that Detective Carlin possessed sufficient Spanish speaking skills to carry on an in-depth conversation. His answers to the prosecutor's questions were therefore admissible. (*Ibid.*) Consequently, the record does not establish that the prosecutor infected the trial with unfairness by eliciting speculation, or that the prosecutor used deceptive or reprehensible methods in an attempt to persuade the trial court or the jury.

Lopez argues that the prosecutor used repeated questions to berate Lopez and inflame the passions of the jurors. Also, he argues that the questions were argumentative. Those objections were forfeited because they were not asserted below. In any event, we disagree with Lopez's characterization of what transpired. The prosecutor's questions were brief and did not exceed what was necessary to obtain an answer from Lopez that clarified his position.

## IV. The Absence of a Section 868.5 Admonishment.

Lopez argues that he was denied his due process right to a fair trial because the trial court failed to admonish the support person not to prompt, sway, or influence the minor as required by section 868.5, subdivision (b).[4] Insofar as defense counsel did not

---

[4] Section 868.5 entitles a prosecuting witness in a trial involving crimes under, inter alia, sections 269 and 288.7 to have a support person present during the witness's testimony. (§ 868.5, subd. (a).) Section 868.5, subdivision (b) provides: "In all cases,

14

request an admonishment, Lopez claims ineffective assistance of counsel. Neither argument succeeds because there is no indication that the support person prompted, swayed or influenced the minor.

A. Standard of Review.

De novo review governs when, on appeal, a defendant challenges a conviction on the basis that he was denied due process right to a fair trial. (*Diamond v. Reshko* (2015) 239 Cal.App.4th 828, 842 (*Diamond*).)

B. Relevant Proceedings.

After opening statements, the prosecutor called the minor to the witness stand. The prosecutor then asked if the minor's mother could be with the minor as a support person during her testimony under section 868.5. According to the prosecutor, the mother did not speak English and would not understand any of the questions and answers. Defense counsel objected on the theory that the minor would be reluctant to testify truthfully in her mother's presence. He argued that the minor's support person should be a social worker. The prosecutor asked the minor if she would accept "Martha," a witness victim advocate, as the support person instead of the minor's mother. The minor agreed.

When the minor took the stand, the trial court told the jury, "The other person up here is a support person and in these kinds of cases, a support person can be designated and she's there just to offer support for the witness." Defense counsel did not request an admonishment, and none was given.

C. Forfeiture.

Because Lopez did not object to the support person, Martha, providing support for the minor without an admonishment, his objection was forfeited. (See *People v. Myles* (2012 ) 53 Cal.4th 1181, 1214 [defendant could not challenge the presence of a victim support person on appeal because he did not object during the trial]; *People v. Rogers* (2006) 39 Cal.4th 826, 856.)

---

the judge shall admonish the support person or persons to not prompt, sway, or influence the witness in any way."

D.  No Denial of a Fair Trial.

To be complete, we review Lopez's arguments despite his forfeiture.

The United States Constitution "'guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment[.]'" (*United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 146.)  For example, a defendant has a right to a trial in front of an impartial jury, and a right to confront witnesses.  (U.S. Const., 6th Amend.)  Broadly speaking, state courts have an obligation under the Due Process Clause of the Fourteenth Amendment "to ensure 'that "justice shall be done"'" in all criminal prosecutions. [Citations.]'" (*Cone v. Bell* (2009) 556 U.S. 449, 451.)  In this way, defendants are protected "against fundamentally unfair treatment by the government in criminal proceedings.  [Citation.]" (*Doggett v. United States* (1992) 505 U.S. 647, 666.)

Based on due process concepts, a criminal defendant has a right to "a trial in which jurors set aside preconceptions, disregard extrajudicial influences, and decide guilt or innocence 'based on the evidence presented in court.'  [Citations.]" (*Skilling v. United States* (2010) 561 U.S. 358, 438, (dis. opn. of Stomayor, J).)

Though Lopez states in a heading in his brief that he was denied a fair trial because the trial court did not admonish the support person pursuant to section 868.5, subdivision (b), Lopez offers no legal authority or analysis.  "'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.  [Citations.]'" (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.)[5]  Nonetheless, it is worth stating that because

---

[5]    Though he offers no argument on the constitutional issue, Lopez suggests that the trial court's failure to admonish the victim support person was prejudicial state law error under *People v. Watson* (1956) 46 Cal.2d 818, 837 (*Watson*) (reasonable probability of a different outcome absent error).  Lopez never explains why.  Regardless, because the record fails to disclose any improper actions by the victim support person, any state law error was harmless under *Watson*.

16

the record fails to establish improprieties by the support person, the absence of an admonishment did not cause unfairness.

        E.  <u>No Ineffective Assistance of Counsel</u>.

        To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate prejudice. (*Cole*, *supra*, 33 Cal.4th at p. 1202, fn. 11.) Because the victim support person did nothing improper, the record fails to establish prejudice due to defense counsel's performance.

## V.  Alternative B to CALCRIM No. 121.

        Lopez maintains that the trial court violated his state and federal constitutional right to have an impartial jury determine every material issue presented by the evidence when it failed to instruct the jury pursuant to Alternative B to CALCRIM No. 121 sua sponte.[6] Also, Lopez argues that defense counsel provided ineffective assistance for failing to request that instruction.

        A.  <u>Standard of Review</u>.

        A claim of instructional error is reviewed de novo. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569–570.) So, too, as we have already indicated, is a constitutional challenge based on the contention that a defendant was denied his due process right to a fair trial. (*Diamond*, *supra*, 239 Cal.App.4th at p. 842.)

---

[6]    Alternative A to CALCRIM No. 121 provides: "Some testimony may be given in [a language other than English]. An interpreter will provide a translation for you at the time that the testimony is given. You must rely on the translation provided by the interpreter, even if you understand the language spoken by the witness. Do not retranslate any testimony for other jurors. If you believe the court interpreter translated testimony incorrectly, let [the trial court] know immediately by writing a note and giving it to the (clerk/bailiff)." Alternative B to CALCRIM No. 121 provides: "You (may/are about to) hear a recording [that is partially] in a foreign language. You will receive a transcript with an English language translation of that recording. [¶] You must rely on the transcript, even if you understand the language in the recording. Do not share your own translation with other jurors. Please write a note to the clerk or bailiff if you believe the translation is wrong. [If the recording is partially in English, the English parts of the recording are the evidence.]"

17

B.  Relevant Proceedings.

Prior to commencement of trial, the trial court gave various instructions to the jury, including this:  "Some testimony may be given in this case in a language other than English.  If that happens, an interpreter will provide a translation to you.  At the time that testimony is given, you must rely on the translation provided to you by the interpreter even if you understand the language spoken by the witness.  [¶]  Do not retranslate any testimony for other jurors.  If you believe the court interpreter may have translated testimony incorrectly, please let me know immediately by writing a note and giving it to my clerk or my bailiff."

The prosecutor played an audio recording of Detective Carlin's interview of Lopez through a Spanish translator.  The jury had a written side-by-side, Spanish-to-English translation of the recording prepared by a state-certified interpreter employed by the defense.  The jurors were told that they could read the translation as they were listening to the recording.

After the trial concluded, the parties discussed jury instructions.  Defense counsel agreed to the instructions that had been proposed.  The proposed instructions did not include Alternative B to CALCRIM No. 121.  The trial court therefore did not give that particular instruction.

C.  Forfeiture.

Except to the degree he was deprived of his substantial rights, Lopez forfeited his contention that the trial court should have given Alternative B to CALCRIM No. 121.  This is so because defense counsel did not offer it as a proposed instruction.  (*People v. Prieto* (2003) 30 Cal.4th 226, 247.)

D.  No Constitutional Error.

Lopez concedes there is no case law imposing a duty on a trial court to give Alternative B to CALCRIM No. 121 sua sponte.  Nonetheless, he urges us to hold that the trial court had a sue sponte duty because that alternative represents a general principle of law that was "'closely and openly connected with the facts before the [trial court], and which [was] necessary for the jury's understanding of the case.'"  (*People v. Diaz* (2015)

18

60 Cal.4th 1176, 1189.) In our view, there was no sua sponte duty because Alternative B to CALCRIM No. 121 was not necessary for the jury to understand the elements of the charged crimes or any defenses.

Even if there was error, Lopez failed to establish that he was deprived of substantial rights by the omission of Alternative B to CALCRIM No. 121. He does not, for example, suggest that any jurors spoke Spanish, there were material discrepancies between the audio recording and the translation provided by the defense, and the trial was rendered unfair by the possibility that the Spanish-speaking jurors considered the audio recording instead of the translation.

E. No Ineffective Assistance of Counsel.

Lopez failed to explain how he was prejudiced by defense counsel's performance. As a result, we reject Lopez's ineffective assistance of counsel argument. (*Cole*, *supra*, 33 Cal.4th at p. 1202, fn. 11.)

**VI. Custody Credit.**

Lopez argues, and the People concede, that he is entitled to one more day of credit for presentence custody.

The record establishes that Lopez was awarded 1,057 days of actual custody credits. This was error. He was arrested on August 25, 2011, and sentenced on July 17, 2014, which resulted in 1,058 days of presentence custody. He was entitled to actual custody credits for those days. (§ 2900.5, subd. (a); *People v. Smith* (1989) 211 Cal.App.3d 523, 526.) A sentence "'that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered. [Citation.]' [Citations.]" (*People v. Cardenas* (2015) 239 Cal.App.4th 220, 235–236.) Consequently, we shall order the judgment modified to add one additional day of actual custody credit to Lopez's sentence.

19

# DISPOSITION

The judgment is ordered modified to reflect that Lopez is entitled to one additional day of actual custody credit, which brings the actual custody credits to 1,058 days and the total credits, including 158 days of conduct credits, to 1,216 days. The clerk of the superior court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment reflecting this modification. As so modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT