JAMES L. DENNIS, Circuit Judge,
dissenting:
During the penalty phase of Carlos Trevino’s capital murder trial, his defense counsel put on a single mitigation witness, his aunt, who in testimony that filled only five pages of trial transcript stated little more than that Trevino’s mother had alcohol problems and was living in nearby Elgin, Texas; that Trevino had dropped out of high school; and that she thought that he was incapable of capital murder. Defense counsel had not previously located or talked to Trevino’s mother, nor did counsel introduce any other mitigating evidence. After hearing only this and the State’s aggravating evidence, the jury found that Trevino had failed to demonstrate sufficient mitigating circumstances to warrant a sentence of life imprisonment without parole. As a result, he was sentenced to death.
During federal post-conviction proceedings, Trevino’s federal habeas counsel contacted Trevino’s mother in Elgin, Texas, and learned from her that during her pregnancy with Carlos she drank between eighteen and twenty-four bottles of beer every day. Counsel hired three experts who developed substantial evidence that Trevino suffers from fetal alcohol spectrum disorder (FASD), a condition that results from a child’s in útero exposure to alcohol during his mother’s pregnancy and which can cause brain damage and resulting impairments in behavioral and cognitive functioning.[1] Trevino argues that his *552 trial counsel was constitutionally ineffective in failing to conduct a reasonably thorough mitigation investigation, to discover evidence that he suffered from FASD, and to present this powerful mitigating evidence to the jury, and he asks this court to reverse the district court’s dismissal of his claim, vacate his death sentence, and grant him a new penalty trial. I believe that he is entitled to this relief. Had trial counsel cónducted a reasonably competent investigation, discovered that Trevino suffered from FASD, and presented evidence of his condition to the jury, there is a reasonable probability that the result of the penalty phase would have been different, viz., that at least one juror would have voted against imposing a death sentence.[2] See Wiggins v. Smith, 539 U.S. 510, 537, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); see also Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (“A reasonable probability is a probability sufficient to undermine confidence in the outcome.”).
A majority of the current panel comes to the contrary conclusion and denies Trevino relief on the merits, holding that trial counsel’s failure to investigate, discover, and present evidence of Trevino’s FASD during the penalty phase did not prejudice his case. To reach this conclusion, the majority opinion misapplies controlling precedent and misconstrues the relevant evidence. Because a proper application of Supreme Court and Fifth Circuit decisions to the facts of this case plainly lead to the conclusion that Trevino was prejudiced by his trial counsel’s deficient penalty-phase performance, I respectfully dissent.
As an initial matter, in this case we must apply de novo review because no state court adjudicated Trevino’s claim of penalty-phase ineffective assistance of counsel on the merits. See § 2254(d); Cone v. Bell, 556 U.S. 449, 472, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). As a result, we must squarely consider whether Trevino is entitled to relief under Strickland and its progeny. We cannot shield our decision under the “deference and latitude” afforded by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), as they “are not in operation when the case involves review under the Strickland standard itself.” See Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).
“As with all claims for ineffective assistance of counsel, relief based on an insufficient mitigation investigation requires a showing of both deficient performance and prejudice.” Loden v. McCarty, 778 F.3d 484, 498 (5th Cir. 2015) (citing Porter v. McCollum, 558 U.S. 30, 38, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009)); see also Strickland, 466 U.S. at 688, 694, 104 S.Ct. 2052. Trevino asserts that his trial counsel’s performance was unconstitutionally deficient because counsel failed to conduct a reasonably thorough mitigation investigation, to *553 discover evidence that Trevino suffers from FASD, and to present this mitigating evidence to the jury. FASD occurs in persons who suffer heavy prenatal exposure to alcohol. Persons with FASD typically demonstrate cognitive, academic, attentional, and behavioral deficiencies. The majority opinion does not dispute that Trevino has established that counsel rendered deficient performance in failing to perform a thorough mitigation investigation and to introduce FASD evidence, and rightly so. See Trevino v. Davis, 829 F.3d 328, 349-51 (5th Cir. 2016) (discussing deficiency under Strickland and concluding that, “[gjiven that Trevino’s life was on the line, reasonable jurists would consider the mitigation investigation conducted by his trial counsel insufficient”).
Next, Trevino argues that evidence of his FASD would have established a sufficient mitigating factor that was reasonably likely to have changed the outcome of his sentencing. In order to establish that his attorney’s deficient performance in the penalty phase of a capital case prejudiced his defense, a petitioner must show that there is a reasonable probability that, but for the relevant deficiencies, at least one juror would have voted against imposing a death sentence. See Wiggins, 539 U.S. at 537, 123 S.Ct. 2527; see also Strickland, 466 U.S. at 694, 104 S.Ct. 2052 (“A reasonable probability is a probability sufficient to undermine confidence in the outcome.”).
In support of his claim, Trevino has presented expert and lay witness testimony pertaining to his FASD, including a 2004 report by Dr. Rebecca Dyer, a clinical and forensic psychologist. Dyer stated that “individuals with histories of significant prenatal exposure to alcohol have been shown to present with deficits in adaptive behavior, poor judgment, attentional deficits, and other cognitive deficits throughout childhood, adolescence and into adulthood, which is not the finding in individuals with other childhood difficulties,” and noted that “the deficits found in [FASD] children tend to become more debilitating as these individuals get older.” Dyer conducted a number of interviews, including with Trevino and his mother; administered nine psychological tests to Trevino; and reviewed Trevino’s school and disciplinary records along with available medical records. Based on this evidence — none of which had been discovered by his state trial counsel — Dyer concluded that Trevino suffers from FASD: he functions “within the low average range of intellectual functioning” and has a “history of employing poor problem-solving strategies, attentional deficits, poor academic functioning, memory difficulties, and history of substance abuse.”
Turning to the relevance of her diagnosis to Trevino’s conviction and sentence, Dyer stated:
[Trevino’s] history of [FASD] clearly had an impact on his cognitive development, academic performance, social functioning, and overall adaptive functioning. These factors, along with his significant history of physical and emotional abuse, physical and emotional neglect, and social deprivation clearly contributed to [Trevino’s] ability to make appropriate decisions and choices about his lifestyle, behaviors and actions, his ability to withstand and ignore group influences, and his ability to work through and adapt to frustration and anger.
She concluded that Trevino’s FASD “would ... have impacted any of [his] decisions to participate in or refrain from any activities that resulted in his capital murder charges.”
Dr. Paul Connor, a licensed psychologist and neuropsychologist, also conducted testing on Trevino. Connor found that Tre *554 vino demonstrated deficits in eight domains: academics, especially math; verbal and visuospatial memory; visuospatial construction; processing speed; executive functioning, especially on tasks that provide lower levels of structure and as such require greater independent problem solving or abstraction skills; communication skills, especially receptive skills; daily living skills, primarily “community skills”; and.socialization skills. Based on his initial findings, Connor concluded that Trevino’s “daily functioning skills are essentially at a level that might be expected from an individual who was diagnosed with an intellectual disability.”
This expert evidence is supported and contextualized by lay witness testimony, compiled by mitigation expert Linda Mockeridge, that includes details as to how FASD adversely affected Trevino’s mental and social development. Specifically, Mock-eridge collected testimony establishing that Trevino’s mother drank between eighteen and twenty-four beers a day while pregnant with Trevino; that Trevino weighed only four pounds at birth and had to stay in the hospital for several weeks until he reached five pounds; that Trevino’s developmental milestones were significantly delayed compared to his siblings; that Trevino was not potty-trained until he was six years old and wore pampers at night until he was eight years old; that Trevino repeated several' grades in elementary school and ultimately dropped out of school in ninth grade, at which point he was reading at a third-grade level; that Trevino was “a follower” and acted impulsively; and that Trevino got angry easily.
“ ‘To assess the probability of a different outcome under Strickland, we consider the totality of the available mitigation evidence — both that adduced at trial, and the evidence adduced in the habeas proceeding — and reweigh it against the evidence in aggravation.’ ... In all circumstances, this is the proper prejudice standard for evaluating a claim of ineffective representation in the context of a penalty phase mitigation investigation.” Sears, 561 U.S. at 955-56, 130 S.Ct. 3259 (quoting Porter, 558 U.S. at 40-41, 130 S.Ct. 447 (alterations omitted)); see also Wiggins, 539 U.S. at 534, 123 S.Ct. 2527. We therefore must measure the evidence of Trevino’s crime and other aggravating factors presented to the jury by the State against both the mitigation evidence adduced at trial and the significant new evidence, adduced in the federal habeas proceeding, which contextualizes his criminal history.
Taken together, the newly proffered mitigation evidence establishes that the effects of FASD diminished Trevino’s ability to resist external influences and to evaluate the consequences of his actions. Significantly, it shows that FASD,- a condition caused by conduct outside of Trevino’s control, specifically influenced the decision-making that led him to join others in committing a capital offense. This evidence, “taken as a whole, ‘might well have influenced the jury’s appraisal’ of [Trevino’s] culpability, and the likelihood of a different result if the evidence had gone in is ‘sufficient to undermine confidence in the outcome’ actually reached at sentencing.” Rompilla v. Beard, 545 U.S. 374, 393, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (first quoting Wiggins, 539 U.S. at 538, 123 S.Ct. 2527, then quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052); cf. Williams v. Taylor, 529 U.S. 362, 398, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (knowledge that petitioner’s childhood was “filled with abuse and privation” and that he was “ ‘borderline mentally retarded,’ might well have influenced the jury’s appraisal of his moral culpability”); Penny v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (“If the sentencer is to make an individualized assessment of the appropri *555 ateness of the death penalty, ‘evidence about the defendant’s background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.’ ” (quoting California v. Brown, 479 U.S. 538, 545, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) (O’Connor, J., concurring))).
The majority opinion offers two related reasons for avoiding this necessary conclusion. First, it notes that Trevino’s counsel did present the jury with some mitigating evidence, viz., the brief testimony of Trevino’s aunt. Op. at 550. Although this is true, it does not lessen the tendency of the previously unpresented FASD mitigating evidence to persuade the jury to view Trevino as less morally culpable. An attorney’s constitutionally deficient performance is not rendered harmless merely because he presented a superficial mitigation case. See Sears v. Upton, 561 U.S. 945, 954, 130 S.Ct. 3259, 177 L.Ed.2d 1025 (2010) (“We have never limited the prejudice inquiry under Strickland to eases in which there was only little or nb mitigation evidence presented.”). Thus, the majority opinion’s argument is meritless.
Second, the majority opinion asserts that Trevino’s previously undiscovered FASD evidence suffers from a “significant double-edged problem,” op. at 551, arguing that it has both aggravating and mitigating effects and that the failure to introduce it therefore could not have prejudiced Trevino. The majority mistakenly relies on Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), and Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), two cases in which the Supreme Court rejected claims of ineffective assistance of counsel based on counsel’s decision to not develop and present certain mitigating evidence because of fears that it contained detrimental elements that would harm the defendant’s case. Initially, it must be clarified that, contrary to the majority opinion’s statement that these cases are “examples of double edged evidence preventing a finding of prejudice,” op. at 551 n.5, both Burger and Darden were in fact decided on the deficiency prong of Strickland. In both cases, defense counsel, after conducting a reasonably competent investigation, opted not to develop and present mitigation evidence that would have opened the door for the prosecution to present damaging evidence to the jury. Burger, 483 U.S. at 794-95, 107 S.Ct. 3114; Darden, 477 U.S. at 186, 106 S.Ct. 2464. And in both cases, the Court found that counsel’s strategic decisions were entitled to substantial deference and thus did not constitute deficient performance under the first prong of Strickland. Burger, 483 U.S. at 794-95, 107 S.Ct. 3114; Darden, 477 U.S. at 186, 106 S.Ct. 2464.
Under Strickland, “a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). As this court has observed, “the fact that an attorney reached the wrong conclusion does not necessarily make his performance deficient.” United States v. Freeman, 818 F.3d 175, 178 (5th Cir. 2016). The Supreme Court’s determination in Burger and Darden that counsel’s decision not to present certain mitigation evidence on the grounds that it might undermine another defense strategy was “professionally reasonable” therefore *556 has no bearing on the distinct question presented here of whether there is a reasonable probability that, had mitigation evidence been presented, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. To the extent that the majority opinion relies on Burger and Darden, its argument must therefore fail.
Further, the majority opinion exaggerates the potential aggravating impact of Trevino’s FASD evidence. Although some of the new lay-witness testimony includes potentially aggravating statements about Trevino’s past conduct, evidence of a similar nature had already been presented by the State during the penalty phase;[3] additional, cumulative references to these negative factors would thus be of marginal relevance to the jury. The majority opinion also points to Dyer’s statement that Trevino’s FASD “would not have significantly interfered with his ability to know right from wrong, or to appreciate the nature and quality of his actions at the time of the capital offense” as potentially aggravating. Op. at 550. But the jury would have found this testimony by Dyer to merely state the obvious, as Trevino did not assert an insanity defense and the same jury had already found him guilty of the offense. By focusing on this statement, the majority opinion elides the much more significant part of Dyer’s testimony: that FASD “clearly had an impact on [Trevino’s] cognitive development, academic performance, social functioning, and overall adaptive functioning” and that “[tjhese deficits would ... have impacted ... [his] decisions to participate in or refrain from any activities that resulted in his capital murder charges.”
Even if the mitigation evidence Trevino offers were meaningfully double-edged, that would not foreclose his claim for relief. Both the Supreme Court and this court have found that previously unpre-sented evidence indicating reduced moral culpability was sufficient to establish prejudice even when such evidence also had a potential aggravating effect. For example, in Williams, despite significant aggravating evidence, the Supreme Court found that newly proffered evidence of mistreatment, abuse, and neglect during the petitioner’s early childhood, as well as testimony that he was “borderline mentally retarded,” might have influenced the jury’s appraisal of the petitioner’s moral culpability. 529 U.S. at 398, 120 S.Ct. 1495. The Court noted that although “not all of the additional evidence was favorable,” id. at 396, 120 S.Ct. 1495, the mitigation evidence reinforced the notion that the petitioner’s violent behavior “was a compulsive reaction rather than the product of cold-blooded premeditation,” and explained that “mitigating evidence unrelated to dangerousness may alter the jury’s selection of penalty, even if it does not undermine or rebut the prosecution’s death-eligibility case,” id. at 398, 120 S.Ct. 1495. Similarly, although the FASD evidence may not have affected the jury’s finding as to Trevino’s future dangerousness, it nevertheless would have provided insight into his motivations and state of mind and, in so doing, “might well have influenced the jury’s appraisal of his moral culpability.” See id.
In Rompilla, the Supreme Court considered new mitigation evidence that included prison files documenting “a series of [juve *557 nile] incarcerations ... often of assaultive nature and commonly related to over-indulgence in alcoholic beverages,” as well as “test results that the defense’s mental health experts would have viewed as pointing to schizophrenia and other disorders,” “test scores showing a third grade level of cognition after nine years of schooling,” and evidence of childhood abuse and severe privation. 545 U.S. at 391-92, 125 S.Ct. 2456. Despite what the majority opinion would undoubtedly call the “double-edged nature” of this evidence, the Court concluded, “It goes without saying that the undiscovered ‘mitigating evidence, taken as a whole, might well have influenced the jury’s appraisal of [the petitioner’s] culpability.’ ” Id. at 393, 125 S.Ct. 2456 (quoting Wiggins, 539 U.S. at 538, 123 S.Ct. 2527). I see no reason why the evidence offered by Trevino would not have had the same effect.
Finally, in Neal v. Puckett, 286 F.3d 230, 243-44 (5th Cir. 2002) (en banc), despite our recognition that some of the proposed mitigating evidence that Neal sought to introduce might be considered “double-edged,” we concluded that “with a more detailed and graphic description and a fuller understanding of [the defendant’s] pathetic life, a reasonable juror may have become convinced of [his] reduced moral culpability.”[4] In the same way, a fuller description of Trevino’s life that included his struggles with FASD may have convinced a reasonable juror of his “reduced moral culpability” even if parts of that description could be characterized as “double-edged.” See id.
The reasoning undergirding Williams, Rompilla, and Neal strongly supports the conclusion that Trevino suffered prejudice as a result of trial' counsel’s failure to conduct a reasonably thorough mitigation investigation, to discover evidence that Trevino suffers from FASD, and to present this mitigating evidence to the jury. The FASD evidence and supporting lay witness testimony put Trevino’s life and his juvenile and criminal history in context and help to explain his conduct. “[A]l-though ... it is possible that a jury could have heard [the additional mitigation evidence] and still have decided on the death penalty, that is not the test.” Rompilla, 545 U.S. at 393, 125 S.Ct. 2456. The question before this court is whether “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Had the jury heard about the existence, origin, and effects of Trevino’s FASD, it is difficult not to conclude that “there is a reasonable probability that at least one juror would have struck a different balance.” See Wiggins, 539 U.S. at 537, 123 S.Ct. 2527.
I respectfully dissent.

. FASD is an umbrella term used to define a broad range of effects and symptoms caused by prenatal alcohol exposure. According to the National Institute on Alcohol Abuse and Alcoholism at the National Institutes of Health,
■ Each individual with FASD experiences a unique combination of day-to-day challenges that may include medical, behavioral, educational, and social problems. People with FASD may have difficulty in the following areas: learning and remembering, understanding and following directions, shifting attention, controlling emotions and impulsivity, communicating and socializing, [and] performing daily life skills, including feeding, bathing, counting money, telling *552 time, and minding personal safety. FASD-related brain damage makes it difficult to address routine life situations. It causes people to make bad decisions, repeat- the same mistakes, trust the wrong people, and have difficulty understanding the consequences of their actions.
Nat’l Inst, on Alcohol Abuse & Alcoholism, Fetal Alcohol Exposure (April 2015), https:// pubs.niaaa.nih.gov/publications/fasdfactsheet/ fasd.pdf.

. ' Indeed, a previous panel of this court unanimously granted a certificate of appealability (COA) to Trevino, concluding that "not only ... [could] reasonable jurists ... debate whether the district court erred in dismissing his FASD claim but ... reasonable jurists would agree that the district court erred by doing so.” Trevino v Davis, 829 F.3d 328, 356 (5th Cir. 2016) (emphasis added).

. Specifically, the majority opinion notes that the new evidence shows that although Trevino was a good father and employee, he had also been abusive toward his girlfriends, possessed firearms, was in a street and prison gang, and abused drugs and alcohol. Evidence that Trevino was at times prone to violence, was associated with a gang, and had previous drug convictions had already been presented by the State during the penalty phase.

. The en banc court ultimately denied relief to Neal, concluding that under the deferential standard of 28 U.S.C. § 2254(d), it could not say that the Mississippi Supreme Court unreasonably applied Strickland. Neal, 286 F.3d at 243. Nevertheless, had the court not been constrained by § 2254(d), as is the case here, it would have concluded that there was a reasonable probability that a single juror would have been swayed. Id. at 244.